EMILY R. BAKER, plaintiff in error, *vs.* LYDIA A. LYMAN, executrix, defendant in error.

1. Though a levy on several city lots, all of which are claimed, recites that one of the lots, without designating which, was in the possession of the defendant in execution, the *onus* is not thereby cast on the claimant, and it was not error in the court to hold that the burden of proof was on the plaintiff in execution, and that he was entitled to open and conclude before the jury.

2. Letters from the claimant to the plaintiff or the record of a suit and judgment in favor of claimant against the defendant, which tend to illustrate the issues involved, and do in fact aid in determining it, are competent evidence for the plaintiff.

3. When the interrogatories of a witness have been taken on the ground of his being aged and infirm, and he resides in the town where the case is tried, this court will be slow to hold that the judge who tried the case, committed error in requiring the presence of, and sending for such witness, instead of permitting his interrogatories to be read ; and particularly will this be so, when the court inquires to its satisfaction as to the ability of the witness to come into court and undergo the examination, and it further appears that the witness is a near relative to and the vendor of claimant, and that no injury resulted to claimant from such ruling by the court.

4. When all the property of a debtor in this state, except a very small portion, is transferred by a voluntary conveyance to a relative, it is not a sufficient reply to the issue of fraud made by a creditor upon such a deed, that the debtor has sufficient property in a distant state to discharge his indebtedness —especially if the donee was aware, at the time of receiving such deed, of the debt due the attacking creditor and that payment thereof was being urged.

5. It is proper for the court to qualify a request to charge as the testimony may authorize.

6. The question submitted by the court to the jury was the true one in the case, to-wit: was the deed made to hinder and delay creditors and was the claimant who took under it aware of that intention ; and we cannot say that the verdict was not right under the evidence.

Claim. Argument. Evidence. Interrogatories. Witness. Debtor and creditor. Fraudulent conveyance. Charge of court. New trial. Before Judge McCUTCHEN. Bartow Superior Court. September Adjourned Term, 1873.

At the September term, 1872, of Bartow superior court, Lydia A. Lyman, as executrix upon the estate of Samuel P. Lyman, deceased, recovered a judgment against Caleb Tompkins for $1,300 00 principal, and $515 80 interest, on a note dated December 27th, 1866, due one year after the date thereof, and payable to the order of plaintiff's testator. The execution based upon this judgment was levied as follows:

"Levied the within *fi. fa.* on two houses and lots on Stonewall street, in the city of Cartersville, Georgia, one of same occupied by defendant, said lots containing two acres each, more or less; also, one vacant lot on said Stonewall street, opposite the above described premises, containing one acre, more or less; also, one vacant lot lying south of A. F. Morrison's lot, and fronting on Main street, in Cartersville, Georgia, containing one acre, more or less, all levied on as the property of Caleb Tompkins, defendant in execution, this 8th day of October, 1872."

This property was claimed by Emily R. Baker. Upon the trial of the issue thus formed, substantially the following evidence was introduced:

The plaintiff introduced the record of the suit in which the judgment was obtained, the execution with the levy thereon, and proved by John H. Wikle that the defendant had been in possession of the property levied on for about seventeen years; that since the execution of the deed from defendant to claimant, both seemed to occupy the property; that witness did not know who had been in actual possession since the date of the deed, but thinks defendant; that after the defendant had been in possession of the property a few years, claimant came to live with him.

The claimant introduced testimony as follows:

1st. Deed executed by defendant on September 1st, 1869, in

Baker *vs.* Lyman.

consideration of natural love and affection, conveying to "his niece," the claimant, various pieces of property, embracing that in dispute, witnessed by W. C. Green and N. D. Lewis. Recorded December 3d, 1870.

2d. N. D. Lewis, who testified as to the execution of the aforesaid instrument at the time it purports to bear date.

3d. The claimant, who testified that said deed was executed when it purports to bear date; that her uncle, the defendant, owned at the time of the execution of the said instrument, and still owns, two thousand eight hundred and eighty acres of land in northern Texas, also seven hundred acres or more, of mining and farming lands in middle Alabama; that she supposes "both are worth upwards of $30,000 00 ;" that he was fully responsible for all the debts he owed, as they were but few, wholly independent of the property conveyed in said deed; that she does not know the plaintiff who purports to have been the wife of her testator; that testator told witness during his life that he was a widower with one son. That the deed was not made for fraudulent purposes. That the letters from witness to plaintiff's testator, (hereafter referred to), in speaking of the note given by defendant to said testator for means to carry on the mining matter here in the south, were not written to defraud him, as he was as deeply interested in that matter as was the defendant. That neither witness nor her uncle seek to swindle any one, but are pursuing their own lawful business, "which is their inalienable right, that every freeman has the right to enjoy without hindrance or molestation." That plaintiff's testator himself proposed to witness by letter to have the property deeded to her by defendant.

4th. At this stage of the case the claimant offered the depositions of the defendant, as of an aged and infirm witness. This evidence was objected to on the ground that the defendant resided in the city of Cartersville, within a few hundred yards of the court-house, had been subpoenaed and was able to attend court. Evidence was introduced *pro* and *con* as to his physical condition. The court sent a bailiff to notify him

to come in person. This officer reported that he met the defendant coming out of his residence with a letter in his hand; that he notified him that the judge had sent for him to come into court, to which he replied that he was not able to go. That he saw nothing the matter with him. The court then ordered him brought in, and certifies that upon an inspection and personal examination of him, it became satisfied "that he was abundantly able to attend the court and to give his testimony discreetly and quietly." The court then excluded his depositions and claimant excepted.

5th. Caleb Tompkins, the defendant, who testified that he was nearly seventy-four years old, and his health not good; that he has an affection of the heart and is troubled with shortness of breath; that exercise or excitement impairs his memory. That the deed made by him to claimant was executed and witnessed the day it bears date. That he was then, and is still, solvent. That he did not own any other property in Georgia of any consequence at the time of the execution of said instrument, except that embraced therein. That the lot of land in Cherokee county, not covered thereby, is not worth more than $100 00. That plaintiff's testator knew that he owned this property, and was worth $20,-000 00 or more. That he knew that this transfer of property to claimant was in contemplation and approved it. That he owned property in other states of the value of $20,000 00.

Plaintiff, in rebuttal, submitted testimony as follows:

1st. Four letters from claimant to plaintiff's testator, all of which were objected to by claimant and objection overruled. The first dated November 29th, 1866. This communication commences by complaining that said testator, in a letter to defendant, had sent no message to the writer, and asserting that she was jealous and disposed to quarrel with him. Refers to their becoming acquainted in Washington city with pleasure. Argues the necessity of the union people of the north assisting those of similar sentiments at the south by loans of money on good security, by purchase of lands for future speculation, by developing the mineral interests, by

Baker *vs.* Lyman.

sending German emigrants, etc.   Refers to the large amount of property owned by defendant at the south, which he is unable to use in any way, as the rebels will not assist an union man, and as General Sherman ordered all the towns burned between Chattanooga and Atlanta, Cartersville included.  Asserts that for this reason the defendant has been unable to do anything since his return, being unable to borrow even the small sum of $300 00 at the north, for a few months, until he could build his house.   That he has the lumber ready seasoned, but needs just that much to erect it.   That when built he will be more than able to pay the person loaning to him, and it will at the same time give him a chance of transacting business for himself.   Then proceeds as follows :   "So if you have a friend, a married man, that can loan uncle the above named amount, or if even yourself, general, can accomodate him, do so, for I will assure you, on the honor of a lady, that he is very abundantly able to give you all the security you wish, as he has a great deal of real estate here at the south, and valuable mineral lands, that as you said in your letter, are of great value to him, or, if he should not live, to me, as his only heir, lands that he does not wish to sacrifice now for a song, when, by this little loan, he can do well enough without selling it, until such time as he can develop his mineral lands, and put them on market at his own price, or better, far better perhaps, as you named, to northern capitalists.   And if you do not wish to loan it to *him,* loan it to *me,* general, 'tis in safe hands and a good investment."

The second dated December 14th, 1867.   This letter acknowledges the receipt of favors of the 9th and 11th, instant, states that the defendant has given to the writer "such an old piece of news" to him (plaintiff's testator) his iron mine fifteen miles from Cartersville; that no deed has been made but that defendant will convey it through claimant to any purchaser.   Asks testator to sell it for her for $20,000 00 at once.   Shows how it is worth that much and proposes various modes of sale.   Offers to let him have $4,000 00 out of the proceeds to pay her present indebtedness to him and the

surplus as a loan. Begs that as he had been unable to raise the $300 00 asked by her, that he will certainly send her $100 "right off." Urges this last proposition with great earnestness and ability.

The third dated June 4th, 1868. The writer complains of having been misunderstood as to her or defendant's owing anything on the latter's property. Says she meant to state simply that they had some little bills contracted in order to live. Complains of inability to sell property or to collect debts; that there are no laws to do a loyal man justice; that "so soon as these lawful laws get established by our republican governor, R. B. Bullock, and he convenes a lawful and loyal radical legislature, we shall then get justice done us, and we will again have a chance to get what belongs to us." The writer then says that she can see no necessity of mortgaging their property to testator. Asserts in the most solemn manner the certainty that he will receive what is due him; that in any contingency, she and her uncle will have honor enough out of the large amount of property he has, to place enough of it in the hands of some lawyer or friend to secure him. Refers to the watchful care of providence over her and her uncle; urges the testator not to be unmindful of the manifold blessings heaped upon him, etc. The letter then proceeds thus: "I think if you were here, or anywhere in the fix that we are, I would not have so far forgotten your distresses, never, for when I am a friend, I am a friend. Oh! how my heart would have ached for you, and I could not have rested day or night, until your wants had been supplied, nor would uncle have rested until we had aided you. This is a woman's heart; I do not know a gentleman's, you see, so you will pardon me for expressing so much sincerity, but then I cannot help it. I have ever thought too much of you since we first met in the capitol at Washington, to feel otherwise, yet rather than see you suffer one hour, I would sacrifice much. Yet as you cannot let us have the $300 00 without mortgages to you, rather than have our, at present, entirely unincumbered property hampered down so that it could not be sold at any hour be-

Baker *vs.* Lyman.

tween this and fall, so that we can be at liberty to pay you out of those proceeds at any time, as soon as available, and give all that trouble and ourselves too, 'tis better as it is, for we do not wish to owe you either principal or interest no longer than to get it paid up, and a mortgage on it and their terrible no laws at all at this time, would neither prosper yourself nor us. We are too honorable to give such a mortgage. I feel it would be a disgrace to me in my own estimation, and I know uncle would be the same. You did not send the money here for such a purpose, but to speculate in gold lots. Uncle purchased the two lots; we have ever considered it as much your as our interest. You requested the note and uncle gave it to you, so that if anything should occur in the unsettled condition of the country, you could lose nothing, no way; and again, if all eventually became settled here you would have the benefit of the proceeds of the lots, did they prove available, so that we have ever supposed matters between us were thoroughly understood, and rested until that time contented. Yet as the south is———— we concluded it was much better to leave and go west, and do much better than east, as we thought of last summer, and I wrote you, and this is what we wish to sell out for, is to pay you, to settle up these little debts here, and while uncle goes west, for me to spend a few months north. But as you are unwilling to make a further loan of $300 00 except by mortgage, we would rather do without the loan and make sale of the property as soon as possible, and pay you what we now owe you, for 'tis impossible to so entangle the property. We could never sell it at all then; it would be useless to try. I am sorry you have refused under that consideration. But with faith in God we will yet be blessed, we will try and make some other arrangement. Sincerely hoping that this will prove satisfactory, with regards," etc.

The fourth, dated June 25th, 1858. The writer begs to be excused for her long delay in replying as she and her uncle were considering what was best to be done; states that they had finally determined, for the sake of plaintiff's testator, to

remain at Cartersville and to sell and pay out of debt; that they will not leave until every farthing due him is paid; that his recent desire to have her uncle mortgage to him $20,000 worth of property to secure $1,400 00, has made her sick of all debt.

2d. Two letters from claimant to plaintiff, also objected to, and objection overrruled. The first dated October 19th, 1869, acknowledging receipt of favor of 10th instant, informing claimant of the death of testator. This document was full of grief and of the profoundest sympathy for the plaintiff on account of her irreparable loss in the death of her husband; informs plaintiff of the circumstances under which the indebtedness to her testator was created; states that $1,000 00 of the amount embraced in the note held by the plaintiff was invested with her uncle in purchasing gold mining lots, the testator requesting the note only from her uncle to secure him against loss should any difficulty arise from the unsettled condition of the south, on account "of its continued rebelliousness;" urges that the mining property will prove a fortune to plaintiff, etc.

The second dated June 3d, 1870, acknowledging receipt of letter to her uncle, which she replied to on account of his serious illness; states that legal proceedings are entirely uncalled for; that the indebtedness will be paid at the earliest possible moment; that it would have been settled before had it not been for the severe sickness of her uncle; refers to the fact that martial law only existed then Georgia, to the confidence shown by her deceased husband in the writer and her uncle, and begs that she will extend the same, etc.

3d. W. C. Green, who testified that he was an attesting witness to the deed from defendant to claimant, and that it was not executed on the day it bears date; gives reasons for this statement.

4th. Record of suit in Bartow superior court in favor of claimant against defendant on note for $15,000 00, dated December 10th, 1865, due January 1st, 1866, payable to claim-

Baker *vs.* Lyman.

ant or order, with credit thereon of $100 00, of date February 2d, 1869. Judgment rendered March 15th, 1873.

Then follows in the brief of evidence two letters from plaintiff's testator to claimant; by whom introduced does not appear, but it is supposed by the claimant, on account of their bearing on the case. The first was written from New York, dated December 11th, 1867, as follows: "I have just received your letter of the 7th instant, in which you say you are to do or cause to be done what I have urged you to do in a letter written three or four days ago on my return from the country. If you have any other property that will sell, use it now while you want money and must have it. One dollar now may be worth ten by-and-by. I shall rejoice in being able to do anything to help you accomplish your wishes and objects with the party or parties of whom you speak. If you should get here so that we could put our two heads together we could contrive some good way to crush anybody whom you did not like and desired to be crushed, and to put up anybody whom you liked and desired to be put up. For a month or more money will be scarce, but knowing men think and say that after that time there will be a change for the better. In the meantime we must get ready for selling or borrowing, or for whatever is the best that can be-done. Nothing ventured nothing gained. Nobody yet comes to my relief. God bless you."

. The second, from the same place, dated December 19th, 1867, acknowledges receipt of letter from claimant of the 14th instant, in reference to sale of mining interest given to her by her uncle, the defendant, advises her as to the best manner of effecting such sale, complains of the scarcity of money at the north, promises to assist her in carrying out her desires," etc.

The evidence being closed, the court held that the plaintiff in execution was entitled to the opening and conclusion of the argument, to which ruling the claimant excepted.

The court charged the jury as follows: "If the defendant in *fi. fa.* was in possession of the property at the time the levy was made, this would cast the *onus* on the claimant.

But if the defendant was not in possession at that time, then the burden would be on the plaintiff to show title to the property levied on in the defendant in *fi. fa.* Possession by itself, unexplained, is evidence of title for the consideration of the jury. If the defendant and claimant lived together on the land, or on any part of it, this would not be conclusive of a joint possession of the land so occupied. If two persons are living together on land, and the evidence shows that one owns and claims title to the land, and the other does not, then the possession would be in the one who owns and claims title, and not in the one who does not. A judgment lien, as such, binds only the property which the defendant in *fi. fa.* owned at the time the judgment was rendered, or owned at some time subsequent thereto, and it does not attach, as a judgment lien, to property which had been, *bona fide*, transferred by defendant before the date of the judgment. If the defendant in *fi. fa.* once owned the lands, and if the claimant claims title from the defendant in *fi. fa.* by virtue of a conveyance made before the plaintiff's judgment was rendered, then the property would not be subject to plaintiff's *fi. fa.*, unless the claimant's deed was, for some reason, void as against the plaintiff.

"If the deed from the defendant to the claimant was not made in good faith, but was made and intended by the parties thereto for the purpose of defeating, delaying or hindering the plaintiff in the collection of his debt, or other creditors of the defendant generally, in the collection of their debts, then the deed would be void, and no protection to the claimant in this case. A voluntary conveyance, without any consideration to support it other than love and affection, cannot be sustained against creditors whose debts existed at the time of the conveyance, unless the maker of such deed, at the time it was made, had other property or means besides the property so conveyed reasonably sufficient to pay his then existing debts. But, on the other hand, a voluntary conveyance made in good faith and without any intent to defraud or delay creditors, may be sustained against a prior creditor, provided the

donor had, at the time of the conveyance, other property reasonably sufficient to pay his then existing debts.

"But it is insisted by claimant that General Lyman, plaintiff's testator, advised or consented to this conveyance to claimant, and is bound by that consent. · On this point the court instructs you that a man may waive his rights and cannot complain of that which he advises, or to which he consents, with a knowledge of the facts. If General Lyman advised or consented to this conveyance, this is a fact for your consideration in determining whether the plaintiff should be allowed · . to attack the claimant's deed. If such advice or consent was given, claimant's deed would be valid as against the plaintiff, unless there were some false or fraudulent representations or concealment by defendant or claimant which misled General Lyman, and induced him so to advise or consent, you must find from the evidence how this was."

The jury found the property subject. The claimant moved for a new trial upon the following grounds, to-wit :

1st. Because the court erred in ruling that the plaintiff in execution was entitled to the opening and conclusion of the argument.

2d. Because the court refused to give certain requests in charge to the jury. These requests are numerous and are omitted as they were substantially given, though not in the precise language presented.

3d. Because the court erred in admitting the letters from claimant to plaintiff's testator, above set forth.

4th. .Because the court erred in admitting the record of the suit in favor of claimant against defendant in Bartow superior court.

5th. .Because the court erred in excluding the depositions of defendant and in having him brought into court to testify in person, under the circumstances above set forth..

6th. Because the court erred in charging the jury as follows : "If you believe from the evidence that the defendant in execution did have property other than that deeded to the claimant sufficient to pay his debts, still, if you believe from

the evidence that the defendant intended by the transfer to hinder or delay creditors in the collection of their debts, then it was a fraudulent transfer and void."

To this ground the presiding judge attaches a note to the effect that the language· therein set forth must be taken in connection with his general charge to be properly understood.

7th. Because the verdict was contrary to the law and the evidence.

The motion was overruled and the claimant excepted.

M. R. STANSELL ; J. L. MOORE, for plaintiff in error.

JOHN W. WOFFORD ; JOHN W. WIKLE, for defendant.

TRIPPE, Judge.

1. The levy of the sheriff stated that one of the lots levied on was in the possession of the defendant in execution. It did not specify which lot. Had the levy stated which one of the lots was in his possession, and if that fact thus appearing would have been sufficient to shift the *onus* as to that lot, still there were several other lots which would not have been affected by such entry, and the rule in reference to the burden of proof as to those lots would have been the same as if there had been no such recital of the possession of one of them.

2. The great issue in the case was, that the conveyance made by defendant in execution to the claimant, was fraudulent as to the plaintiff. The letters of the claimant to the plaintiff were competent upon that issue, and the statements in those letters as to the condition or indebtedness of the defendant, made it competent also for the plaintiff to use the record· of the suit and judgment by the claimant against the defendant. The date of the note to claimant, of the deed executed by the defendant to claimant, and of the suit by claimant on her note, were all points in the case which when considered together, tended to illustrate the question before the jury.

3. We cannot see how the claimant could have been injured

Baker *vs.* Lyman.

by the court's sending for and requiring the presence of her uncle in court. He was claimant's witness. The judge inquired into the matter until he was satisfied that the witness was able to come into court. It does not appear that the witness was, from mental or physical weakness, affected by this requisition of the court so as to impair his mental capacity or memory, or that any damage resulted to claimant on account of it.

4. The claimant, when she took the deed on which she relies, knew of the debt due the plaintiff, and that its payment was being urged. The attack upon that deed is, that it was made with the intention to delay or defraud creditors, and the jury so found. It is not a sufficient reply to say that the debtor had sufficient property in another and distant state to discharge his indebtedness. If a debtor in this state can make a voluntary conveyance of all his property situate here, and then the reply to a complaining creditor that the debtor has property in Texas or Kansas, be sufficient to relieve the transaction of the charge of fraud, all the statutory provisions upon the subject of fraudulent assignments, would, in many cases, be of little avail to the creditor. The question is : was this deed made and received with a fraudulent intent ?

5. It was objected that the court erred in qualifying a request made by plaintiff's counsel to give a certain charge to the jury. In looking through the testimony, we think the court had a right to add the qualification it did, and it was its duty so to do.

6. The charge of the court stated the true question to be decided by the jury, to-wit : was the deed made to hinder and delay creditors, and was that intention known to the claimant. The jury have passed upon the facts, the judge who tried the case refused to interfere with their finding, and we cannot say he abused his discretion.

Judgment affirmed.