[Civ. No. 3342. Second Appellate District, Division One.—October 5, 1920.]

## THE FIRST NATIONAL BANK OF HASKELL, OKLAHOMA, Appellant, v. MAE B. RANGER et al., Respondents.

[1] FRAUDULENT CONVEYANCES—ACTION TO SET ASIDE—BURDEN OF PROOF—SOLVENCY OF GRANTOR—EVIDENCE—FINDINGS. — In an action by the judgment debtor of the husband to set aside certain alleged fraudulent transfers of real estate and money, made by the latter to his wife, and to subject the property so transferred to the payment of plaintiff's judgment, the burden of establishing the alleged fraudulent transfers of the property devolves upon plaintiff, and if the evidence in support of such allegation is very meager, whereas the counter-evidence tends to show that at the time of the transfers the husband was a man possessing considerable means, consisting of cash deposited in banks, oil leases, and boring machinery used in connection with the development of oil of such leaseholds, the appellate court cannot say that the evidence was insufficient to justify the finding of the trial court that the husband was solvent and able to pay his debts at the time when he made the transfers, or that the trial court erred in concluding that the husband in making the transfers did not at the time contemplate insolvency.

[2] ID.—LEASEHOLDS OF GRANTOR—SUBSEQUENT LACK OF VALUE—EVIDENCE OF INSOLVENCY.—The fact that such leaseholds, valued at a large sum of money at the time of the transfers to the wife, subsequently, upon the expenditure of large sums of money thereon in developing the same, proved valueless, did not in itself compel the conclusion that the husband was either insolvent or contemplated insolvency when he made said transfers.

[3] ID.—SUIT AGAINST WIFE—HUSBAND AS WITNESS—PRIVILEGED COMMUNICATIONS.—In an action by the judgment debtor of the husband to set aside certain alleged fraudulent transfers of real estate and money, made by the latter to his wife, and to subject the property so transferred to the payment of plaintiff's judgment, the husband cannot be examined for or against the wife without her consent.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Wellborn, Judge. Affirmed.

3. Privileged communications between husband and wife generally, notes, 24 Am. St. Rep. 663; 29 Am. St. Rep. 411.

The facts are stated in the opinion of the court.

Thomas A. Sanson and Eugene E. Morris for Appellant.

Kemp & Clewett and Schmidt & Riggins for Respondents.

SHAW, J.—Plaintiff, as a judgment creditor of F. B. Ranger, brought this action to set aside certain alleged fraudulent transfers of real estate and money, made by him to his wife, the defendant Mae B. Ranger, and to subject the property so transferred to the payment of plaintiff's judgment.

The appeal is from the judgment entered in favor of defendants.

At the time of the transfers, made in the months of March and May, 1914, F. B. Ranger, as indorser upon a promissory note, was indebted to plaintiff in the sum of $3,500 and accrued interest. On July 26, 1918, the indebtedness originally evidenced by this note and interest thereon amounted to the sum of $5,485.11, for which a judgment was obtained against Ranger. Upon a return *nulla bona* of an execution issued upon the judgment, an *alias* execution was issued, by virtue of which a writ of garnishment was served upon defendant Mae B. Ranger, the purpose of which was to hold and sequester any and all moneys in her possession belonging to Ranger as judgment debtor of plaintiff. She answered, stating that she was not indebted to him in any sum whatsoever and held no property to which he or his creditors were entitled. Thereupon plaintiff brought this action in the nature of a creditor's bill, alleging that on March 24, 1914, when Ranger, without consideration, conveyed to his wife the two lots of land in question, he was insolvent, or if not insolvent, he made the conveyance in contemplation of insolvency, and further, that at the time of serving the writ of garnishment upon Mae B. Ranger she had in her possession upward of $10,000 in money which F. B. Ranger had, for the purpose of defrauding his creditors, given her while indebted to plaintiff and others, all of which allegations Mae B. Ranger by her answer denied.

As to these issues the court found adversely to plaintiff, whose chief contention is that the finding is not justified by the evidence.

Section 3442 of the Civil Code provides "that any transfer or encumbrance of property made or given voluntarily, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, shall be fraudulent, and void as to existing creditors," and section 3450 of the Civil Code provides that "a debtor is insolvent, within the meaning of this title, when he is unable to pay his debts from his own means, as they become due."

[1] While the burden of establishing the alleged fraudulent transfers of the property devolved upon plaintiff, the evidence in support of the allegation is very meager. It appears therefrom that at the time of the transfers made, in the spring of 1914, F. B. Ranger, as an oil operator was, and for a long time prior thereto had been, engaged in acquiring leases of oil lands in the state of Oklahoma and elsewhere, and undertaking the development of the same for the production of oil. Among such holdings was a lease to 560 acres in the Haskell oil field in Oklahoma. At the time in question he had sold 80 acres of this lease to the 99 Oil Company, which had put down a well that produced some 250 barrels of oil per day. The land retained by him surrounded this 80 acres so transferred to the 99 Oil Company on three sides thereof, and Ranger's west line of 160 acres was within 250 feet of the well of the 99 Oil Company, and the south line of 80 acres was within 200 feet of the same. On said 80 acres of land so held by him, and within about 200 feet of the well of the 99 Oil Company, he was at the time in question engaged in boring a well which, when completed, produced about 20 barrels of oil and some 6,000,000 feet of gas. Later he bored two other wells on the lease, neither of which proved successful. The uncontradicted testimony of J. J. Hawk, a stockholder in the 99 Oil Company, is that his leasehold of 480 acres was at the time when Ranger made the transfers reasonably worth $48,000. In addition to this, the evidence tends to show that he had other leases and large sums of money on deposit in sundry banks, including that of plaintiff, which, less the amount given his wife, he used in his oil operations until the funds were exhausted in his unsuccessful operation in developing his property. Other than a number of undated letters written by F. B. Ranger, which the testimony shows he commenced

49 Cal. App.—29

writing more than a year after the transfers, and continued for two or three years, the evidence shows that, in addition to the note held by plaintiff and upon which Ranger as indorser was indebted in the sum of $3,500, he was also an indorser upon a note of the Longuey Mining Company, held by the Hellman Trust & Savings Bank of Los Angeles. Whether this note was secured collaterally or whether the mining company was able to pay the same, is not disclosed, nor is the date of maturity of the note shown. It does appear, however, that the note was fully paid in the month of August following the transfer of the property to his wife, and that Ranger's standing with the Hellman Trust & Savings Bank was such that they loaned him $11,000 upon his unsecured note. With reference to the letters, which appear to have been received in evidence without objection, and aside from any question as to the competency of admissions therein made against his wife, Mae B. Ranger (as to which we entertain grave doubt), the letters have little or no probative force other than to tend to establish the fact that at the time of the transfers Ranger was a man possessing considerable means, consisting of cash deposited in banks, oil leases, and boring machinery used in connection with the development of oil on such leaseholds. Upon these facts this court cannot say the evidence was insufficient to justify the finding that Ranger was solvent and able to pay his debts at the time when he made the transfers. Nor, considering the character of the property owned by him, its situation in being contiguous to the well of the 99 Oil Company, and the fact that after the transfers he expended large sums of money, until he had exhausted his funds, in boring wells and developing the property in an unsuccessful attempt to find oil, can this court say the trial court erred in concluding that Ranger in making the transfers did not at the time contemplate insolvency. On the contrary, it appears that Ranger in making the transfers retained property in value largely in excess of his debts. [2] While the leasehold, upon development thereafter made at a large expenditure, proved valueless, such fact in itself is insufficient to establish fraud on the part of Ranger. In *Evans* v. *Sparks*, 170 Cal. 532, [150 Pac. 372], it is said (quoting from the syllabus): "In an action

by a creditor to set aside such a conveyance proof that the assets retained by the grantor, . . . subsequently became valueless, does not compel the conclusion that the transfer was fraudulent and that the grantor was insolvent.'' So, here, the fact that the leasehold, valued at the time of the transfer in the sum of $48,000, subsequently, upon the expenditure of large sums of money thereon in developing the same, proved valueless, does not compel the conclusion that Ranger was either insolvent or contemplated insolvency when he made the transfers.

[3] Another point made is that the court erred in its ruling that F. B. Ranger was an incompetent witness against his wife, Mae B. Ranger, against whom he was called by plaintiff to testify. Appellant cites subdivision 1 of section 1881 of the Code of Civil Procedure, to the effect that a husband, without the consent of the wife, cannot be examined as to any *communication* made between himself and wife during the marriage, and argues that Ranger's testimony was competent as to all matters other than as to communications made between him and his wife during the marriage. The same section provides that ''a husband cannot be examined for or against his wife without her consent.'' Clearly, the action was one against her, and the purpose of calling him was to testify against her. Without her consent he was not a competent witness. As between husband and wife, the declared policy of the law is to encourage confidence and preserve it inviolate, and, hence, the broad provision of the statute above quoted, subject, however, to exceptions within which the case is not included.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.