[Civ. No. 11704.   First Dist., Div. One.   Dec. 24, 1941.]

WILDER WIGHT, Appellant, v. ALMA REBECCA ROHLFFS, as Executrix, etc., Respondent.

H. Raymond Hall for Appellant.

Elliott Johnson and John L. Reith for Respondent.

KNIGHT, J.—Plaintiff appeals from a judgment in favor of defendant in an action to set aside a gift deed made by Patrick Cahill about ten months prior to his death and recorded five weeks after he died.

The action was brought under the authority of Civil Code sections 3439 and 3442, which are now merged in the Uniform Fraudulent Conveyance Act (Stats. 1939, Chap. 329). Section 3439 declared void as against creditors transfers of property made with intent to delay or defraud any creditor or other person of his demands; and section 3442 provided: " . . . that any transfer or encumbrance of property made or given voluntarily, or without valuable consideration, by a party while insolvent or in contemplation of insolvency, shall be fraudulent, and void as to existing creditors." Plaintiff was admittedly a creditor of Cahill's at the time the latter transferred his property; and defendant concedes that the conveyance under attack was made and given voluntarily and without any valuable consideration of any kind. But at the trial defendant denied that said conveyance was made with intent to defraud, and claimed that by the making thereof Cahill did not render himself insolvent. The trial court held in defendant's favor on both issues. ■ It is well settled that if the conditions set forth in said section 3442 are present, the intent of the grantor is immaterial and the transfer, regardless of the actual intent, is void as to creditors. (*Lefrooth* v. *Prentice,* 202 Cal. 215 [259 Pac. 947], and cases cited therein.) On this appeal plaintiff challenges the soundness of the conclusions reached by the trial court on both of the issues above mentioned, but his main attack is directed against the conclusion that by making said transfer Cahill did not render himself insolvent.

The action was instituted following the termination of previous litigation between plaintiff and defendant involving the financial transactions between Cahill and plaintiff, wherein two appeals were taken; and as shown by the decisions rendered on those appeals and by the record herein, the events which led up to the bringing of the present action were these: Prior to 1918 Cahill and plaintiff purchased 82 acres of en-

cumbered land in San Joaquin County, Cahill supplying the larger portion of the purchase price. The land was cultivated to the growing of olives, and was purchased by Cahill and plaintiff for the purpose of subdividing it and selling the parcels at a profit. On account of plaintiff being incapacitated, Cahill was left in charge of the management and sale of the property, and on December 9, 1918, he executed an instrument declaring he held in trust for plaintiff a one-third interest in said property. Thereafter from time to time Cahill sold the various parcels and discharged the encumbrances. The last parcel was sold in 1929, and on May 3, 1930, Cahill made the gift deed in question to his wife, Emma Cahill, whereby he conveyed to her all real property of which he was the owner. The property was situate in Alameda County, and was of the value of over $30,000. The deed was acknowledged before Cahill's son, a notary, and left with his son to be recorded after Cahill's death. He died on February 25, 1931, and the deed was filed for record on April 3, 1931. Cahill's wife died on November 14, 1931; and the defendant, Alma Rebecca Rohlffs, a daughter, was appointed administratrix and executrix, respectively, of the Patrick and Emma Cahill estates.

Plaintiff was unaware that Cahill had sold all of the San Joaquin acreage until after Cahill's death, and thereupon he presented a claim against Cahill's estate. The claim was rejected, and plaintiff sued on the rejected claim and for an accounting. Judgment was given for the defendant, but the trial judge granted a new trial. The defendant appealed, and on plaintiff's motion, after a hearing, the appeal was dismissed. (*Wight* v. *Rohlffs*, 137 Cal. App. 730 [31 Pac. (2d) 419].) A retrial of the action resulted in the rendition of a money judgment in plaintiff's favor, for the sum of $9682.90, plus costs. The judgment was entered on June 5, 1936; the defendant appealed, and on September 30, 1937, the judgment was affirmed. (*Wight* v. *Rohlffs*, 9 Cal. (2d) 620 [72 Pac. (2d) 142].) The Patrick Cahill estate being without assets to satisfy any part of plaintiff's judgment, plaintiff on December 7, 1937, brought the present action against the defendant as executrix of the Emma Cahill estate to set aside said deed of gift. The trial court found that on May 3, 1930, the date of the making of the gift deed, Cahill owed plaintiff $6926.97, but as already stated held

that by making said deed Cahill did not render himself insolvent. Accordingly judgment was entered for the defendant.

Section 3450 of the Civil Code declares: "A debtor is insolvent, within the meaning of this title, when he is unable to pay his debts *from his own means, as they become due.*" (Italics ours.) In determining the issue of a debtor's solvency under said section, in cases of this kind, it is held that only such assets as are subject to court process at the time of the making of the alleged fraudulent conveyance may be considered; and that even though "A man controlling property out of which he may voluntarily pay his debts, if he will, but which for any reason cannot be reached by process of law and thus without his consent subjected to such payment, is nevertheless insolvent." (*Adams* v. *Prather,* 176 Cal. 33 [167 Pac. 534]; 12 Cal. Jur., p. 1019.) And as to the burden of proof, the defendant in her brief (pp. 11 and 12) concedes the rule to be that " . . . if, in a fraudulent conveyance case under section 3442 of the Civil Code, the complaining creditor shows that the deed was executed without consideration, a *prima facie* case is made and the burden is then shifted to the grantor or grantee or whoever may be defending the case, to show that the grantor had sufficient assets to pay his debts. This has been the rule for a long time," says the defendant, "and when a grantor, or his grantee, or whoever is defending the case, meets this burden by showing that the grantor was solvent, the burden ceases."

The evidence introduced and relied upon by defendant to establish that by the making of said gift deed Cahill did not render himself insolvent, involves three items: (1) $1972.85 deposited in a joint commercial bank account standing in the names of Cahill and his wife; (2) a promissory note signed by John Chinn for the principal sum of $4500 secured by a trust deed to land near Lodi; (3) an asserted interest in his brother's estate in Massachusetts. With reference to the joint bank account, plaintiff contends that at best only half of the property owned in joint tenancy by two persons may be reached on execution issued against one of the joint owners, citing *Bernal* v. *Hovious,* 17 Cal. 541 [79 Am. Dec. 147] (cited approvingly in *Veach* v. *Adams,* 51 Cal. 609) and *Stanton* v. *French,* 83 Cal. 194 [23 Pac. 355]; whereas defendant claims that the entire deposit should be included.

As to the promissory note, plaintiff takes the position that its value is not determined by the face of the note, but by its execution sale value; and that no evidence was offered or received as to such value. Defendant argues that it is the market value of the note which controls, rather than the execution sale value; and in this connection the record shows that evidence was introduced to the effect that the original note secured by the trust deed was given for $5500; that in 1929 a payment of $1000 was made thereon, and on February 28, 1930, a renewal note was given for $4500; that the land covered by the deed of trust was appraised as of May 3, 1930, (the date of the gift deed) at $6000, and as of February 25, 1931, (the date of Cahill's death) at $4500; and that subsequent to Cahill's death the administratrix of his estate paid the maker of the note $50 and obtained a grant deed to the property. With regard to the third item, Cahill's asserted interest in his brother's estate in Massachusetts, plaintiff contends that under well established legal principles the same cannot be listed at all as an asset in determining the question of Cahill's solvency as of the date of the making of the gift deed.

In the final analysis, therefore, the decision on appeal turns upon the question of whether Cahill's asserted interest in his brother's estate in Massachusetts may be reckoned as an asset subject to court process as of the date of the making of the gift deed, for if it may not, then the trial court's conclusion as to Cahill's solvency as of that date cannot be sustained, because as will be noted, even though the entire amount of the joint bank account be added to the full face value of the promissory note, the total falls short by several hundred dollars of reaching the amount of Cahill's indebtedness to plaintiff as of the date of the making of the gift deed. One of the reasons assigned by plaintiff for the exclusion of said asserted interest is that defendant utterly failed to prove that at the time Cahill made the gift deed he was the owner of any interest in or that there was any sum of money whatever due him from his brother's estate, which was subject to court process or which Cahill was entitled to use to pay his creditors, even if he had been so disposed. The point is well taken. No documentary proof whatever was introduced by defendant concerning said asserted interest. The evidence relied upon consisted of the testimony given by Cahill's daughter (the defendant) and his son. However,

all of the daughter's testimony relating to said asserted interest was stricken out upon the ground it was hearsay; and the only testimony given by the son upon this subject which the trial court permitted to stand after granting certain motions to strike was that his father "had a third interest in the income of the estate of Michael Cahill"; that prior to the making of the gift deed his father received three checks from the estate of his brother which "had the insignia of Michael Cahill"; that "after May 3, 1930" (the date of making the gift deed) his father received three checks for the total sum of $4803, which he stated were received "over a period of five months," but the dates were not given. As already pointed out, in order to establish Cahill's solvency it was essential for defendant to prove that on May 3, 1930, the date of the making of the gift deed, there was due Cahill from his brother's estate, and subject to court process, either money or property sufficient in amount to overcome the several hundred dollars deficiency above mentioned; and it will be noted that the son's testimony utterly fails to establish that fact. It does not appear therefrom that on that date any money whatever was due Cahill; and if the testimony be construed as showing that on that date Cahill was the owner of a life estate in one-third of the income from his brother's estate, there is still an entire absence of any evidence proving that on said date there was any money due him therefrom; and in that situation, the bare life estate in income may not be considered in determining the question of solvency. (*Adams* v. *Prather, supra.*)

In the case just cited, Mrs. Prather by her will as it was construed by the Supreme Court bequeathed her husband a life estate in all her property with unrestricted power in his lifetime to use, consume and expend all or any part of the property, but giving certain nieces an estate in remainder in the unexpended portion; but the husband could not as of right give the property away in his lifetime nor make it the subject of testamentary disposition after his death. Mrs. Prather died in 1906, and her estate was valued at some $600,000. Prather was stricken with fatal illness on April 2, 1913, and died seventeen days later. On the date he was stricken ill he owned exclusive of any interest in his wife's estate property of the value of about $106,000, and owed debts thereafter proved and allowed against his estate in the sum of approximately $234,000, all of which had been

contracted by him after the death of his wife and all of which were due and payable on April 2d. During the latter days of his illness by way of gift conveyances and assignments made without consideration he transferred to his brother real and personal property then owned by him and constituting no part of his wife's estate, the value of which was approximately $96,000, leaving at the time of his death exclusive of his wife's estate then in process of administration property of the value of about $9737. Being unable to pay Prather's creditors out of his estate, his executor sued to set aside the gift conveyances and assignments, and in defense of the action it was claimed that by reason of Prather's life estate created by his wife's will he was not insolvent. The court held to the contrary, and in so holding went on to say: "Assuming that, under the will of his wife, Thomas Prather obtained a life estate only, coupled with the powers hereinbefore mentioned, appellant [the grantee] insists that at the time of making the gifts he [Thomas Prather] could, in the exercise of such powers, have used the property of the estate and proceeds of the sale thereof for the purpose of paying his debts. Conceding this to be true, it is answered by the fact that he did not exercise such power which he alone could exercise, but during the latter days of his illness, lasting less than three weeks, conscious as he must have been of his early demise, charged with knowledge that the interest in his wife's estate, from which during his lifetime he was empowered voluntarily to pay his debts, would terminate upon his death, and knowing that, in the absence of such voluntary payment, his creditors who, under the circumstance, were powerless to enforce their demands by process of law, must look to his estate for payment, he gave away the sole and only property possessed by him which at his death could be subjected to the payment of his large indebtedness, and which but for such acts would have been appropriated to such purpose. A man controlling property out of which he may voluntarily pay his debts, if he will, but which for any reason cannot be reached by process of law and thus without his consent subjected to such payment, is nevertheless insolvent. (*Eddy* v. *Baldwin*, 32 Mo. 369; *Schwabacher* v. *Kane*, 13 Mo. App. 126.) The property of Prather's deceased wife was so situated that, conceding he might voluntarily have used it to pay his debts, the circumstances were such that it could not by legal process be reached

after his death by his creditors who, as we have seen, were dependent for payment upon an act, the performance of which he withheld. The effect of his acts, under the circumstances shown, was, as found by the court, to create a condition of insolvency as to his creditors, and ample evidence exists for the finding that the gifts were made in contemplation of the insolvency of his estate and with the intent and purpose of defrauding his creditors.''

It follows, therefore, in the present case, that whatever may have been the nature of Cahill's interest in his brother's estate, defendant failed to prove that there was anything due therefrom on the date of the making of the gift deed, which was subject to process, and that being so, said asserted interest cannot be listed as an asset in determining the question of his solvency as of that date. Before leaving this point it should be stated that at the trial plaintiff objected to the oral testimony given by Cahill's son to the effect that his father ''had a third interest in the income of the estate of Michael Cahill'' upon the ground that it was not the best evidence; and his objections were overruled. And after the filing of the briefs on appeal and prior to oral argument plaintiff made written application to this court for leave to take additional evidence, consisting of the records in the Michael Cahill estate, the purpose of the application being to show that Cahill's interest in his brother's estate amounted to nothing more than ''the right to receive during his lifetime, one-third of the net income, if any, of said estate after the payment of the sum of $20.00 per week to decedent's sister.'' However, since defendant failed to meet the burden of establishing that said asserted interest may be reckoned as an asset, it becomes unnecessary to consider the merits of plaintiff's application, and the same is hereby dismissed.

Plaintiff's other major contention is that regardless of the question of the failure of proof, Cahill's interest in his brother's estate, whatever it may have been, being admittedly situate outside of this state, and hence immune from process of the local jurisdiction, cannot in any event, under well settled legal principles, in an action of this kind, be considered in determining the question of his solvency as of the date of the making of the gift deed. At first thought it would seem that since the conclusion reached on the issue of

insufficiency of evidence calls for a reversal, a determination of plaintiff's alternative point is unnecessary to a disposal of the appeal. But the record shows that the point was urged before the trial court, and received an adverse ruling; and it is apparent that if on retrial the defendant seeks to supply additional evidence to overcome the factual defect above pointed out, the question of the admissibility of all such evidence will again arise, and that the propriety of the ruling thereon, whether favorable or unfavorable to plaintiff, will serve as ground for another appeal. Obviously, if plaintiff's point is good he is entitled on this appeal not only to a reversal, but to a directed judgment, and thus be relieved of the expense of a retrial and bring to a final termination litigation which has already extended over a period of ten years. To repeat what has often been said, there should be an end to litigation; and after having examined the authorities submitted by the respective parties we are convinced that plaintiff's alternative point should be sustained. Corpus Juris, vol. 27, at page 552, gives the rule as follows: "If the property retained is such that it cannot be sold under execution or attachment, or is located in another state . . . it will not avail." In Bump on Fraudulent Conveyances, 4th ed., p. 298, the rule is stated thus: "Whether the property reserved is what will be deemed ample does not depend entirely on the amount and value, as the real end to be accomplished is that the conveyance shall not deprive creditors of the means of collecting their debts. Hence the nature and situation of the property are to be regarded as well as the amount and value. . . . The property must also be in the state where the donor resides. If it is in some other country, where the creditors cannot reach it, the gift may be set aside." In Bigelow on Fraudulent Conveyances, rev. ed., p. 225, the author says: " . . . it follows that a creditor would make a case against a voluntary alienation by his debtor by showing that even if he had means left with which to pay his debts, they were effectually concealed or placed where they could not be taken, or were in some distant state and not easily obtainable." Such doctrine was invoked and applied in this state in *Schwartz* v. *Brandon,* 97 Cal. App. 30 [275 Pac. 448], wherein the question of a grantor's solvency arose in an action to set aside a gift deed which was made one day prior to the rendition against the grantor of an award by the Industrial Accident Commission; and in holding that assets situate outside the

state could not be considered in determining the question of the grantor's solvency, the court said: "There is some evidence that he owns some property in the Azores Islands. This may be dismissed from consideration, as no court would be heard to say that a workmens' compensation for industrial injury shall go to a foreign country for liquidation while the debtor gives away his California property for the reasons of love and affection, thus putting it presumptively beyond his power to respond in damages." Numerous cases from other jurisdictions may be cited, which adhere to the same doctrine. Among them is *James* v. *Stokes*, 203 Ky. 127 [261 S. W. 868], wherein the court said: "Lastly, it is contended that since the proof shows the defendant Stokes to be solvent because of the property he owns in New York, the remedy resorted to by plaintiff cannot be maintained although the conveyed property was all that Stokes owned in this jurisdiction. . . . we are convinced that, because a defendant may possess property in some other jurisdiction or country upon the globe, he is not thereby entitled to fraudulently convey all of his locally situated property and which a local creditor is liable to subject, so as to compel that creditor to go to a foreign jurisdiction to collection his debt." Again in *Rohrer* v. *Snyder*, 29 Wash. 199 [69 Pac. 748], the following language was used: "A creditor, before he is permitted to attack a conveyance which he conceives to be fraudulent, is not obliged to search the entire world for unincumbered property out of which to make his debt. It is sufficient if he finds none within the jurisdiction of the court in which he seeks to set aside the fraudulent conveyance." Other cases holding to the same effect are *Baker* v. *Lyman*, 53 Ga. 339; *Drake* v. *Ward-Truitt Co.*, 149 Ga. 54 [99 S. E. 125]; and *Price* v. *Mazange & Co.*, 31 Ala. 701. In *Baker* v. *Lyman* the court said: "The attack upon that deed is, that it was made with the intention to delay or defraud creditors, and the jury so found. It is not a sufficient reply to say that the debtor had sufficient property in another and distant state to discharge his indebtedness." The basic theory of the doctrine seems to be that if a resident debtor contracts debts in the state wherein he resides, and then makes voluntary conveyance without valuable consideration of his property situate within that state, whereby he renders himself insolvent, he thus deprives his creditors of that which

is rightfully theirs; and in those circumstances they are not compelled to go into distant states to collect their debts, but are entitled to have the gift conveyance set aside.

Defendant does not question the fairness or soundness of the doctrine, but contends that it is not the law of this state. A careful analysis of the cases relied on by defendant demonstrates, however, that factually each of them is essentially different from this one and that the precise point here involved was not there decided. In *Sacry* v. *Lobree*, 84 Cal. 41 [23 Pac. 1088]; *Everts* v. *Sunset Farms, Inc.*, 9 Cal. (2d) 691 [72 Pac. (2d) 543]; and *McKee* v. *Title Ins. & Tr. Co.*, 159 Cal. 206 [113 Pac. 140], the question of outside property was not involved at all. In *Cook* v. *Cockins*, 117 Cal. 140 [48 Pac. 1025], the question was raised but not decided, the court having there expressly stated: "The question is too important a one to decide in a case where it is not necessarily involved." It is evident, therefore, that any discussion appearing in the decision of that case on that question must be regarded as dictum. Furthermore, that case and those cited therein were all decided prior to the 1895 amendment to section 3442, which amendment completely changed the rule, so that a voluntary conveyance without valuable consideration made by an insolvent or by one in contemplation of insolvency is now conclusively presumed to be fraudulent as to existing creditors. (12 Cal. Jur. p. 1019.) Then again in that case the grantor was a resident of the outside state in which the property was situate. Consequently both the grantor and his property were subject to the process of the courts of that jurisdiction; whereas here the grantor was a resident of this state, and the assets in question were situate in another state. Therefore the process of neither jurisdiction could have been invoked against both the grantor and his assets. In the case of *First Nat. Bank* v. *Ranger*, 49 Cal. App. 447 [193 Pac. 788], the plaintiff was an Oklahoma bank to which the grantor became indebted as an endorser on a promissory note. The bank brought the action in California to set aside voluntary transfers made by the grantor to his wife conveying real property in this state. Judgment was given for the grantee, and on appeal the judgment was affirmed. While in that case the trial court in dealing with the question of the grantor's solvency took into account certain leases of oil lands in Oklahoma, the question of whether it committed error in so doing was not discussed,

nor, so far as the decision shows, ever raised as an issue in the case. In *Turner* v. *Tjensvold*, 214 Cal. 105 [3 Pac. (2d) 1018], the trustee in bankruptcy brought suit for the purpose, among others, of setting aside a quitclaim deed made by the bankrupt to his son. The major portion of the indebtedness owed by the bankrupt was to creditors in Canada, wherein he resided before coming to California; and the undisputed testimony showed that at the time of the making of the deed in question his property in Canada exceeded in value the amount of these debts, and at that time his business was prospering and he had adequate means to meet all of his indebtedness. In affirming the trial court's judgment in favor of the grantee the court said: "In this state of the evidence we cannot say that it is insufficient to support the finding as to the solvency of said Gabriel Tjensvold [the bankrupt]." Therefore, all that was held in that case, so far as we are here concerned, was that since the major portion of the grantor's indebtedness was incurred in Canada with creditors there residing, and at the time of the making of the deed in question the grantor was the owner of property in Canada of the value of more than sufficient to pay them, it could not be said that the finding of the trial court as to his solvency was without evidentiary support. *Hasenjeager* v. *Voth,* 91 Cal. App. 394 [267 Pac. 146], is not in point for the reason that it was brought, not under section 3442, but section 3439. As said in the opinion: "At the outstart it may be noted that the complaint, since it failed to charge that the conveyance was without consideration, does not attempt by its allegations to charge fraud in law as designated in section 3442 of the Civil Code. (*Franck* v. *Moran,* 36 Cal. App. 32 [171 Pac. 841].) The complaint attempts simply to charge fraud in fact, without any further specifications of fact than to allege that the conveyance was made with intent to defraud and that the grantor was insolvent." It will be seen, therefore, that the solvency of the grantor was not the controlling issue. Moreover, the testimony relating to outside property was received without objection. The decision in *Thompson* v. *Paige,* 16 Cal. 77, is too indefinite to be considered as an authority on any question here involved. The action was for damages against the sheriff for an alleged illegal levy on certain fruit trees, and the appeal was decided in 1860. It appears from the

head-notes that the court refused to give an instruction reading: "That a man who is insolvent for the want of means to pay his debts in this state, is in law insolvent, without reference to any property in another state"; and in commenting on the refusal to give the instruction it was merely said: "We see no evidence in respect to the insolvency of Webster, and the proposition is too broadly asserted, if there was any proof upon which it could rest." Just how the question of insolvency could have arisen in that case does not appear from the decision. As above indicated, we find nothing in any of the foregoing cases which may be construed as holding that the doctrine here contended for by plaintiff is not the law of this state.

The final point made by defendant is that according to an account filed in Cahill's estate in 1932 there were sufficient assets out of which to pay the amount due plaintiff as of May 3, 1930. With respect thereto it will suffice to say that the order settling said account was subsequently set aside. No part of plaintiff's claim against Cahill's estate was definitely established until the affirmance of the judgment thereon in his favor on September 30, 1937; and admittedly neither at that time nor thereafter have there been sufficient assets in Cahill's estate to liquidate plaintiff's claim.

The judgment is therefore reversed; and since the action is one wherein a trial by a jury is not a matter of right, and in our opinion calls for the exercise of the powers conferred by section 956a of the Code of Civil Procedure, this court finds from the evidence adduced at the trial, and contrary to the ultimate finding made by the trial court, that by the making of said gift deed Cahill, the grantor, was rendered insolvent, and that the gift deed, as to creditors, was and is therefore null and void. The trial court is directed to enter judgment accordingly, and to grant such other and further relief necessary and appropriate to protect the rights of plaintiff as a creditor, and to carry out the views herein expressed.

Peters, P. J., and Ward, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 19, 1942.