[Civ. No. 6386. Third Appellate District.—March 20, 1941.]

FRANK M. CHICHESTER, as Trustee, etc. (Substituted for O. F. FITZPATRICK), Respondent, v. FRED C. MASON et al., Appellants.

Lloyd S. Nix for Appellants.

P. E. Keeler for Respondent.

MONCUR, J., *pro tem.*—This is an appeal from a judgment in favor of the plaintiff in an action by a judgment creditor to set aside as fraudulent two deeds executed by Arthur A. Bergman and Anna L. Bergman, his wife, to appellants Fred C. Mason and Josephine V. Mason, his wife. The first deed covered Lots 12 and 14, Block 7, Tract 5870, and the second deed covered Lots 68 and 69, Tract 7705, in Los Angeles County. The original plaintiff was O. F. Fitzpatrick and the respondent herein, Frank M. Chichester, as trustee in bankruptcy of the estate of Arthur A. Bergman, having been substituted in the place of plaintiff O. F. Fitzpatrick. Arthur A. Bergman and Anna L. Bergman were named as parties defendant in the action but, on motion, the action was dismissed as to them for the reason that the summons had not been served upon either of them or return made within three years after the commencement of the action, the judgment of dismissal being entered March 26, 1937.

The complaint is in two counts, the first alleging that Arthur A. Bergman and Anna L. Bergman transferred all of their property to Fred C. Mason and Josephine V. Mason except their home, upon which a homestead had been filed, and that upon information and belief, the conveyances were executed by the Bergmans without consideration and with intent to hinder, delay, and defraud their creditors, including the plaintiff herein. The second alleges, upon information and belief, that the said conveyances were executed by the said Bergmans without consideration and with intent to hinder, delay, and defraud their creditors, including the plaintiff, and that the said defendants Mason accepted and received said deeds with knowledge of the fraudulent intent upon the part of Bergmans and with intent upon their part, to assist

the said Bergmans in their fraudulent purposes and to hold said lands as a secret trust for said Arthur L. Bergman and Anna L. Bergman.

The said Masons answered denying that the said Bergmans transferred all of their property to the Masons except their home upon which a homestead was filed; that the conveyances were executed without consideration and that the conveyances were executed with the intent to hinder, or delay, or defraud the creditors of the Bergmans, including said plaintiff; admit that the deeds were executed to the said Masons and allege that the deeds were executed for good and valuable consideration. It is also denied that the Masons accepted the deeds with knowledge of the alleged fraudulent intent, or that the said Masons, or either of them, assisted said Bergmans in their alleged fraudulent purposes; and it is also denied that they held the whole of the said lands, or any portion thereof, for the said Bergmans as a secret trust. It is also alleged that the Masons were the owners of the said property so conveyed.

After trial, the court found in favor of the plaintiff upon both counts of the complaint and judgment was entered setting aside the said deeds.

The greater part of the evidence introduced at the trial consisted of the testimony of said Arthur A. Bergman and the depositions of said Fred C. Mason and Josephine V. Mason. These depositions were taken in Chicago, where they then and for a long time theretofore had resided. It appears from the evidence that O. F. Fitzpatrick recovered judgment on the 28th day of March, 1933, against the Bergmans and certain other persons for the sum of $4,715.57, together with costs, in the Superior Court of Los Angeles County, and execution was thereafter issued and returned wholly unsatisfied. On February 23, 1933, the deeds heretofore referred to were executed. The Fitzpatrick judgment, the return of the execution unsatisfied, and the execution of the deeds are admitted.

Josephine V. Mason is the sister of Anna L. Bergman. It appears that no consideration was given the Bergmans at the time of the execution of the deeds and it was contended that at the time the Bergmans were indebted to the Masons in the sum of approximately $14,300, which was said to be evidenced by five written instruments, dated, respectively, February 1, 1928, September 24, 1928, February 20, 1929, July 26, 1929, and March 25, 1930. Arthur A. Bergman was, at the

times mentioned, engaged in the construction of four family flats in the city of Los Angeles, each of which was financed in whole or in part by building loans secured by trust deeds on the respective buildings. The bank accounts used for all of said buildings were received in evidence by stipulation and were carried at the Wilshire and La Brea branch of the Security First National Bank in Los Angeles. The last of said buildings were constructed in 1930.

The depositions of the Masons were taken upon plaintiff's written interrogatories, under Code of Civil Procedure, section 2055; no cross-interrogatories were proposed by the defendants and the defendants were not present at the trial of the case. From these depositions it appears that Fred C. Mason was employed for about twenty-six years in the electrical department of the city of Chicago, starting at a salary of $83 per month, which was later increased to $240. He also worked in off hours for motion picture houses. The compensation for theatre work ranged anywhere from $35 to $110 per week, and for motion picture operating as high as $145 a week. He did not testify as to what portion of his time was engaged in this extra work. He testified that the moneys here in question were the savings from his salaries. He carried small bank accounts in Mid City Bank and in the Continental Bank in Chicago. When asked where the money was kept before it was sent to the Bergmans, he named several banks where at various times he had deposit boxes. Both Mr. and Mrs. Mason testified that in response to a letter from the Bergmans, Josephine V. Mason came to Los Angeles, bringing $6,500 in cash with her, which she and Arthur A. Bergman testified was delivered to him on or about February 1, 1928, and the instrument dated on that date was executed by the Bergmans and delivered to Mrs. Mason. A similar transaction occurred in July of 1929 as to a $2,500 loan. This money also was said to have been an accumulation from the salary savings of Fred C. Mason, and had been kept in deposit boxes and about the home, and was also brought to California by Josephine V. Mason and delivered to Arthur A. Bergman in cash about July 26, 1929. A written acknowledgment of the transaction was executed by the Bergmans and delivered to Mrs. Mason. Another like transaction was testified to as having occurred on March 25, 1930,

when the sum of $2,600 was brought from Chicago to Los Angeles, in cash, by Josephine V. Mason and delivered to Arthur A. Bergman, which money was from the savings of Fred C. Mason and had been kept in safe deposit boxes prior to Mrs. Mason's trip to California. The document dated March 25, 1930, signed by the Bergmans, was said to evidence this transaction. The paper dated February 1, 1928, stipulated that the $6,500 was to be used for the purchase of lot 150, tract 8498, and the erection of a building thereon. This lot was not purchased by Arthur A. Bergman until June 15, 1928.

Arthur A. Bergman furnished to the referee in bankruptcy, in his bankruptcy proceedings, copies of all the bank statements evidencing his bank transactions during the periods involved in this litigation. These statements do not show deposits of amounts corresponding to any of the alleged loans, and the manager of the La Brea and Wilshire branch testified that he had examined the original deposit slips of all deposits appearing on the bank statements and that none amounting to $1,000 or more were cash deposits.

Arthur A. Bergman, for the purpose of financing the erection of various buildings being built by him, secured a loan from the Western Mortgage Corporation in the sum of about $16,000. The assistant treasurer of the mortgage company testified to the progress payments made on each of the buildings, which corresponded with the deposits shown in the bank accounts amounting to as much as $1,000. When asked what he did with the $6,500 in cash, Arthur A. Bergman said, ''I might have bought some property, I may have paid some bills and I may have put some in the bank. I can't remember that far back.'' He also testified that he did not remember whether he deposited the $2,500 which he said he received from Josephine V. Mason but that he did deposit the $2,600 in the bank which he received on March 25, 1930.

In his testimony before the referee in bankruptcy he testified he could not remember in what bank he deposited it, but he thought it was in the western section of Los Angeles. On the trial he testified the Wilshire and La Brea branch was the only bank in which he deposited any money in connection with these building operations.

Immediately following the execution of the deed of March 20, 1933, to the Masons, Fred C. Mason gave Arthur A.

582

Bergman full authority to receive and disburse rentals from the four family flats conveyed by that deed. A bank account was opened in the name of Fred C. Mason and a part of the rentals received by Bergman was deposited in this bank where Fred C. Mason had lodged authority to honor checks drawn by Bergman. Approximately $900 of the moneys collected by the defendants were never deposited to the account, and Bergman testified that he had never kept any account of the receipts and disbursements in connection with these eight flats, each of which rented for from $35 to $55 per month, that he had never rendered a statement to the Masons of any receipts or disbursements in connection with said property; and, further, that since the date of the deeds, neither of the Masons had been in California. The Masons testified that since the dates of the deeds, they had never requested or received any statements, or money from Bergman.

A number of statements from various persons for repairs and expenses in connection with the flat buildings were introduced, showing the charges were made by Arthur A. Bergman personally and were receipted showing payment to him.

At the time the deeds were made to the Masons, the five documents, signed by the Bergmans, were not delivered to the Bergmans, but were at the time of trial still in the possession of the Masons, photostatic copies thereof being attached to their depositions.

Testifying before the referee in bankruptcy, Bergman at first stated that the money was deposited "in our account", referring to the $6,500, but could not remember in what bank this money was deposited. He said Josephine Mason probably went with him to the bank. That testimony was as follows: "Q. Did you deposit any of that money? A. I guess I did." On the trial of the case he testified as follows: "Q. What did you do with it (The $6500.00)? A. I can't remember that far back. Q. Did you and Josephine Mason go to the bank to deposit that money? A. No." In connection with the alleged loan of $6,500, it appears that Bergman did not acquire the contract for the purchase of lot 150, tract 8498, until June 15, 1928. He was not able to state where this money was kept down to the time the purchase was made.

██ Arthur A. Bergman was called as an adverse witness by the plaintiff and was permitted to testify over the objec-

tion of the defendants, and it was contended that as the case stood dismissed as to him at the time of the trial the court was in error in permitting this procedure. However, it appears that Bergman's testimony was necessarily required by plaintiff in proving many of the facts in connection with the case and, under these circumstances, we are satisfied that no error was committed in permitting his testimony, and also that no prejudice resulted to defendants by reason of the procedure pursued in connection with the examination of said Arthur A. Bergman. The case of *First National Bank* v. *DeMoulin,* 56 Cal. App. 313 [205 Pac. 92], appears to be authority for the procedure herein adopted. Therein at page 321, it is said: "We do not understand that respondent claims that it was surprised by DeMoulin's testimony. But surprise is not always a necessary element. Such impeaching evidence may be given when the witness to be discredited was put on the stand to prove his own fraud."

It is conceded that if the deeds in question were made without consideration and that thereafter the Bergmans became insolvent, the presumption that said deeds were made with intent to hinder, delay, and defraud creditors, and particularly the plaintiff, would attach. Unquestionably, if the deeds were executed in consideration of the prior indebtedness claimed to be owing from the Bergmans to the Masons, the conveyances would be valid so far as the question of consideration was concerned. (*Ferguson* v. *Larson,* 139 Cal. App. 133, 135 [33 Pac. (2d) 1061]; *Hart* v. *Church,* 126 Cal. 471, 480 [58 Pac. 910, 59 Pac. 296, 77 Am. St. Rep. 195]; *Frey* v. *Clifford,* 44 Cal. 335.)

In connection with the knowledge and fraudulent intent on the part of the defendants to assist the Bergmans in their alleged fraudulent purposes and to hold said lands in a secret trust for the said Bergmans, it appears that the Masons knew of the Fitzpatrick action prior to the execution of the deeds referred to. Fred C. Mason, in his deposition, testified: "We had a letter that suit was pending by Fitzpatrick." Arthur A. Bergman, when asked about the circumstances under which the deed of February 23, 1933, was made, testified: "She (referring to Josephine V. Mason) knew that we have trouble with Fitzpatrick, and she came out here and wanted her money. What kind of trouble you say she knew about with Fitzpatrick? A. Well, he had a law suit against us."

Many cases presenting facts analogous to those appearing in the instant case have been before the courts of this state and the law applicable to transactions of the kind here involved is well settled. In the case of *Borgfeldt* v. *Curry*, 25 Cal. App. 624, at page 625 [144 Pac. 976], it is said:

"The law applicable to the question is found in sections 3439 and 3442 of the Civil Code. Those sections read respectively as follows:

"Section 3439. 'Every transfer of property or change thereon made, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor, and their successors in interest, and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor.'

"Section 3442. 'In all cases arising under section twelve hundred and twenty-seven, or under the provisions of this title, except as otherwise provided in section thirty-four hundred and forty, the question of fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for valuable consideration; provided, however, that any transfer or encumbrance of property made or given voluntarily, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, shall be fraudulent and void as to existing creditors.' . . .

"These sections, in common with the remainder of the code, should be liberally construed with a view to effecting their purpose. That purpose undoubtedly is to prevent debtors from placing property which legitimately should be available for the satisfaction of demands of creditors beyond their reach, or, in other words, to compel a person engaging in business to take the hazards and risks thereof as well as the chances for profit. If misfortune should overtake him he must face it himself, and not attempt to saddle it on to those who have extended him credit and trusted in his commercial integrity."

In the case of *Fross* v. *Wotton*, 3 Cal. (2d) 384, at page 393 [44 Pac. (2d) 350], it is held:

"From the very nature of the action direct proof of the fraudulent intent of the parties is an impossibility. For

this reason and because the real intent of the parties and the facts of the transactions are peculiarly within the knowledge of those sought to be charged with the fraud, proof indicative of fraud must come by inference from the circumstances surrounding the transaction, the relationship and interests of the parties. (*Moore* v. *McDonald,* 122 Cal. App. 61, 69 [9 Pac. (2d) 556], and cases cited). . . . ''

In the case of *Moore* v. *McDonald, supra,* at page 69, there is found the following:

''It is well recognized by all courts that in cases of this kind where the facts and circumstances of a transaction are entirely within the knowledge of the adverse parties it is often impossible for a plaintiff to secure direct testimony of the real facts of a transaction of the nature of the one here involved. Under such circumstances the trial court is permitted to draw reasonable inferences from the evidence and upon such inferences base its judgment . . . 'It would in most cases be extremely difficult, and in many cases absolutely impossible, to procure direct evidence of this nature. In all cases it is permissible to prove fraud by circumstances, and in most cases it is the only evidence available. In aid of the direct facts proved, legitimate inferences are permitted to be indulged to establish other facts not directly in evidence. (*Butler* v. *Collins,* 12 Cal. 457; *Levy* v. *Scott,* 115 Cal. 39 [46 Pac. 892].)' Our duty under these circumstances is set forth in *Mah See* v. *North American Acc. Ins. Co.,* 190 Cal. 421 [26 A. L. R. 123, 213 Pac. 42, 44]. 'This court has frequently held that even though all the facts are admitted or uncontradicted, nevertheless, if it appears that either one of two inferences may fairly and reasonably be deducted from those facts, there still remains in the case a question of fact to be determined by the jury (or by the trial judge where the case is tried without a jury), and that the verdict of the jury or the finding of the trial judge thereon cannot be set aside by this court on the ground that it is not sustained by the evidence. (*Anderson* v. *Los Angeles Transfer Co.,* 170 Cal. 66 [148 Pac. 212].) In so far as the evidence is subject to opposing inferences, it must upon a review thereof be regarded in the light most favorable to the support of the judgment (*Woodard* v. *Glenwood Lumber Co.,* 171 Cal. 513, 519, 520 [153 Pac. 951]; *Hassell* v. *Bunge,* 167 Cal. 365, 367

[139 Pac. 800]). "In reviewing a question of this kind, all the inferences reasonably possible from the evidence favorable to the plaintiff (the prevailing party) must be indulged by this court." (*Bandle* v. *Commercial Bank of Los Angeles*, 178 Cal. 546, 547 [174 Pac. 44, 45].)' "

 Even if it be conceded that there was consideration for the execution of the said deeds, if there was knowledge of the fraudulent intent on the part of the Bergmans and intent upon defendants' part to assist the Bergmans in their fraudulent purpose and to hold said lands as a secret trust for the said Bergmans, the deeds should be set aside and declared void. (*Fross* v. *Wotton, supra*; *Liuzza, etc.,* v. *Brinkerhoff*, 3 Cal. App. (2d) 218 [39 Pac. (2d) 283].)

It was the province of the trial court to determine the credibility of the witnesses and the weight to be given to the testimony, and from all of the facts and circumstances appearing before it, and from the inferences reasonably to be drawn therefrom, the conclusion to be reached.

 Considering the facts as shown by the evidence in this case that the Bergmans were codefendants in the action brought by O. F. Fitzpatrick and their apparent belief that a judgment therein would be rendered against them; Arthur A. Bergman's professed inability to remember the manner of the disposition of the very substantial amounts of money claimed to have been received by him from the Masons; the inconsistencies in his testimony; the method used by Mrs. Mason of carrying the large amounts of money claimed to have been paid to Arthur A. Bergman, in cash, from Chicago to Los Angeles; the fact that the Masons did not appear to be interested enough in their affairs to appear in Los Angeles at the trial of the case to assert their alleged rights, and from which fact the trial court could reasonably draw the inference that they feared to appear at the trial and subject themselves to cross-examination; the fact that the Masons knew of the Fitzpatrick action against the Bergmans; the fact that by the execution and delivery of the deeds in question the Bergmans thereby rendered themselves insolvent; the execution of the authorization to Arthur A. Bergman to collect the rentals from the building and the manner in which such rentals were handled by him; and also all of the other facts and circumstances disclosed by the evidence, many of which it

has not seemed necessary to relate; in view of the authorities bearing upon such matters hereinabove set forth, we are satisfied that there is ample evidence in the record, together with the inferences reasonably to be drawn therefrom, to support the findings and judgment of the trial court.

It is not the province of this court, under the circumstances here appearing, to set aside the judgment of the trial court, and it is therefore affirmed.

Thompson, Acting P. J., and Tuttle, J., concurred.