[Civ. No. 24605. Second Dist., Div. Two. Oct. 27, 1960.]

HERBERT J. BECK, Appellant, v. WEATHER-VANE CORPORATION (a Corporation) et al., Respondents.

Leon L. Gordon for Appellant.

Gerson Marks for Respondents.

FOX, P. J.—On November 1, 1957, plaintiff, an attorney, executed an agreement to release, for $500, a lien he held on the proceeds of a lawsuit. On November 13th, plaintiff gave

notice of rescission on the ground of fraud and deceit. The following day he filed this action for judicial rescission and to foreclose his lien. A few days later a check for the $500 was mailed to plaintiff which, however, he declined to accept and immediately returned. The trial court determined that defendants were not guilty of any fraud or deceit, and denied plaintiff any relief other than a judgment for $500, the amount of the agreed consideration for the release of the said lien. Plaintiff has appealed.

For some time prior to July 1952, Beck had represented defendants Wisok and Weather-Vane Corporation, and a number of other corporations either owned or controlled by Wisok. At that time Wisok and his wife owned all the stock of Weather-Vane. The corporation was defunct and not engaged in any business activity, and its only asset was a lawsuit for damages against Minnesota Mining and Manufacturing Corporation which was pending in the superior court.

Wisok and Weather-Vane owed Beck a substantial sum for legal services, but neither had funds with which to make payment. So, on July 1, 1952, Wisok executed on behalf of Weather-Vane, an assignment giving Beck a lien in the amount of one third of any funds derived by Weather-Vane from said cause of action, but not to exceed $5,000.

Initially Weather-Vane was represented in its litigation against Minnesota Mining by attorneys William Douglas Sellers and Jay D. Rinehart, who were handling the case on a contingent fee basis by which they were to receive 50 per cent of any amount that might be recovered. However, in August 1957, these attorneys were substituted out of the case without their consent, and Samuel Kurland, Esq., and defendant Foley, who was also an attorney, were substituted as counsel for Weather-Vane. Kurland also had the case on a contingent fee basis, under which he was to receive one third of any amount that might be realized. It seems that sometime prior to this substitution of counsel, Foley had become the owner of all the stock of Weather-Vane. Whether the stock had actually been transferred to him from Mrs. Wisok is not clear. But that is not here material. The Weather-Vane case came on for trial in the latter part of October 1957. On October 30th it was continued for approximately two weeks to enable the parties to explore the possibility of settlement. At that time the plaintiff was only about half way through with its first witness, whose testimony apparently was of major importance. In addition to the claims of Sellers and Rinehart, Kurland

and plaintiff against any funds that might be realized from this litigation by Weather-Vane, there were also three other claims, namely, State of California $6,726.07, Harvey Machine Company $5,098.16, and Walter Smith $5,223.20. Upon the trial of the case being recessed, Wisok and Foley proceeded to contact the various claimants for the purpose of ascertaining the basis upon which their respective claims might be settled, they having the day before received an offer of settlement from Minnesota Mining in the amount of $150,000.

There is a conflict in the evidence as to which of the claimants was first contacted by either Wisok or Foley. However, it is clear that, pursuant to an appointment by telephone, they went to plaintiff's office on the afternoon of November 1, 1957, to discuss with him the settlement of his claim against Weather-Vane. At that conference, according to Beck, Wisok explained that the trial of the Weather-Vane case had been started; that it "was not going well" because the witness that Weather-Vane had on the stand was having great difficulty in recalling facts relating back some five or six years; that the case was then in temporary recess; that they had a chance to settle it "on a cost of defense basis only."

Beck testified that he asked both Wisok and Foley whether they "had received an offer of settlement," to which Foley replied that they had not received such an offer. Beck further testified that he made inquiry as to what was being offered to other creditors and what they were offering him. The reply was that they were willing to pay him $500, that is, 10 cents on the dollar. He further testified that he was told they had seen several of the creditors and had offered no creditor more than 10 cents on the dollar and were not going to offer any creditor more than 10 cents on the dollar with two possible exceptions: the tax lien of the State of California, which would have to be paid off in full, and the 50 per cent contingent fee contract that Sellers and Rinehart initially had for handling the Weather-Vane case. He further testified that Wisok stated he would be very fortunate to have enough money to pay his train fare back to Detroit from the proceeds of any possible settlement. Beck further stated, on direct examination, that Foley remarked that because of the amounts of the liens it would be impossible to settle the case unless all the creditors were willing to take no more than 10 cents on the dollar, with the possible exception of the State and the Sellers-Rinehart claims. On cross-examination, Beck stated on this aspect of the settlement that Foley and Wisok came into his office on No-

vember 1st and told him that the case was progressing badly and that "the only way that a [sic] lawsuit could be settled is each creditor reduce its claim to about ten cents on the dollar. . . . " Foley produced a form of release, which was blank as to both the date and the amount. After some further conversation, Beck filled in the amount, $500, and the date, and then signed it. Beck also testified that he relied upon the representations made in this conversation with Wisok and Foley and that he understood a "cost of defense" settlement was a nominal settlement, "a few thousand dollar settlement, possibly." A settlement of the Weather-Vane case was concluded on November 6th for a total of $150,000. Kurland settled his claim for $15,000, while the Sellers-Rinehart claim was settled for $7,500. Beck learned of the settlement on November 13th and immediately gave notice of rescission. He filed this action the next day. On or about November 27th Beck received Foley's check in the amount of $500. Beck immediately returned it.

Foley was called under section 2055, Code of Civil Procedure. After testifying regarding the circumstances leading up to the conference at Beck's office on November 1st, Foley explained that the trial of the Weather-Vane case had started but was then in temporary recess for the purpose of exploring possible settlement. He told Beck that they were not too happy with the way the trial was going and explained to him some of the reasons for this appraisal of the situation. Beck then inquired whether there was any possibility of the case being resolved short of concluding the trial, and also, "How much are you asking," to which Foley replied: "[W]e asked over three hundred thousand because of the fact that it appeared to us that it would be necessary to get approximately that much in order to come out with anything, and that they had offered only about half of it. And we don't know how it would be possible to resolve it, but that we had continued the matter for approximately two weeks and that we were contacting each of the lien claimants to determine whether or not they were interested in offering any inducement to the Weather-Vane Corporation to settle this particular action." Beck then inquired: "Well, precisely how much is offered and who is going to get what?" Foley testified that he categorically refused to go beyond what he had already told Beck, and refused to discuss the precise method of distribution. Beck, according to Foley's testimony, said he thought he ought to have $1,500. During the course of discussion, Foley pointed out that it

would not be possible to accept a settlement of the Weather-Vane lawsuit that "didn't run into six figures." After some further discussion Beck accepted the $500 offer in settlement of his claim. When called as a witness in his own behalf, Foley denied telling Beck (a) that the Weather-Vane suit against Minnesota Mining could be disposed of only on a cost of defense basis; (b) that this litigation could only be disposed of if the creditors of Weather-Vane compromised their claims at 10 cents on the dollar; (c) that no settlement offer had been received by Weather-Vane from Minnesota Mining; and (d) that Wisok stated during this conference, "I will be lucky to get train fare back to Detroit from this lawsuit," referring to Weather-Vane's suit against Minnesota Mining. Wisok, from the witness stand, denied making any of the foregoing statements. Although Wisok's testimony varied from that of Foley in certain respects, it was, generally speaking, in agreement with it.

The crucial finding in this case is as follows: "It is true that none of the defendants made any false or fraudulent statements or representations of any kind to plaintiff." It is thus apparent that the precise issue in this case is essentially factual. The decisive question on this appeal then is: Does the evidence adequately support the foregoing finding? We have concluded that it does.

The law is clear that in a fraud action the plaintiff must establish his case by clear and convincing evidence. (*Maslow* v. *Maslow*, 117 Cal.App.2d 237, 242 [255 P.2d 65].)
It is equally well settled that the credibility of the witnesses, the weight that should be given to their testimony, and the inferences reasonably to be drawn therefrom, are for the determination of the trial court. (*Dillard* v. *McKnight*, 34 Cal.2d 209, 223 [209 P.2d 387].) In this connection it should be pointed out that the trial judge may reject the uncontradicted testimony of a witness provided he does not act arbitrarily. (*Hicks* v. *Reis*, 21 Cal.2d 654, 659-660 [134 P.2d 788].) "Relevant in this respect are many considerations: interest of the witness in the result of the case, his motive, the manner in which he testifies, and the contradictions appearing in the evidence." (*Kraut* v. *Cornell*, 175 Cal.App.2d 528, 532 [346 P.2d 438].) It should be noted too that the rule that it is the responsibility of the trier of fact to resolve the conflicts and inconsistencies in the testimony, applies also to conflicts and inconsistencies in the testimony of a particular witness. In *Showalter* v. *Western Pacific*

*R. R. Co.*, 16 Cal.2d 460, 479 [106 P.2d 895], the court stated that ''where the testimony of a witness is itself contradictory and inconsistent, the jury may believe certain portions thereof and reject others.'' In accord are *People* v. *Frankfort,* 114 Cal.App.2d 680, 700 [251 P.2d 401]; *Peterson* v. *Peterson,* 74 Cal.App.2d 312, 319 [168 P.2d 474], and *Nevarov* v. *Caldwell,* 161 Cal.App.2d 762, 777 [327 P.2d 111].

It is apparent from the résumé of the testimony that there is a sharp conflict in the evidence on the question of fraud and deceit. The trial court resolved that conflict against the plaintiff. This was obviously within its province under the principles above stated, and is binding on appeal. Thus plaintiff has failed to establish his case.

Plaintiff points out certain inconsistencies and contradictions between the testimony of Foley and Wisok at the trial and what they said when their depositions were taken. But such inconsistencies and contradictions do not, as a matter of law, discredit the entire testimony of these witnesses. It is still for the trial court, as the authorities cited *supra* demonstrate, to resolve such matters and determine where the truth lies.

Plaintiff also vigorously argues certain segments of the testimony in an effort to show that the particular fact in dispute was erroneously decided by the court below. Such matters do not present any question of law for appellate review since they turn upon the trial court's appraisal of the evidence on the question and the reasonable inferences to be drawn therefrom.

The basic difficulty with plaintiff's argument is that he would have this court reevaluate the credibility of the witnesses, reweigh the evidence, and draw inferences contrary to those drawn by the trial court. Under firmly established principles we are not at liberty to do this.

There is no merit in plaintiff's contention that the court erred in failing to make specific findings on allegations of false and fraudulent representations contained in an amendment to his first amended complaint. After making the general finding that ''none of the defendants made any false or fraudulent statements or representations of any kind to plaintiff'' the court then made the following additional finding: ''Except as otherwise herein specifically found, *none of the allegations* of the first amended complaint, or of the *amendment to first amended complaint, is true.*'' (Emphasis added.) This general finding is sufficient. (*Wilbur* v. *Kemp,* 80 Cal.

App.2d 787, 789 [182 P.2d 206]. See also 2 Witkin, California Procedure, § 114, pp. 1846-1847.)

 Plaintiff complains that Finding V (erroneously referred to as Paragraph IV), in which the court found, "It is true that, prior to the commencement of this action, and at the time that payment of the same first became due, a tender of said payment of $500.00 had been made to the plaintiff, and that he refused to accept said payment" is not supported by the evidence. It is true that the statement in the finding that the $500 was tendered to plaintiff prior to the commencement of this action is not correct. The complaint was filed on November 14, 1957, and Foley's check for $500 was enclosed in his letter to plaintiff dated November 27th. Plaintiff made no objection to the form of the tender and returned the check to Foley in a letter dated December 2. Obviously plaintiff was in no way prejudiced by this inadvertent statement in the finding.

The release signed by Beck on November 1, 1957, provided, *inter alia,* that the $500 was to be paid to him within 10 days after funds became available from the settlement. Settlement was effected on November 6th. Obviously, funds therefrom were not available prior to that date. Assuming funds were available on the earliest possible date, November 6th, payment would not have been due plaintiff under the terms of the release until November 16th. However, plaintiff gave notice of rescission on November 13th by which he repudiated the release agreement. Therefore, defendants were not thereafter obligated to make a tender of the $500 for they were not required to do an idle act. (*Liver* v. *Mills,* 155 Cal. 459, 463 [101 P. 299] ; Civ. Code, § 1515; 52 Am.Jur., Tender § 4, p. 216, and cases therein cited.) The futility of making a tender is emphasized by plaintiff's refusal of the tender made on or about November 27th.

 Since Beck had repudiated the release agreement he was not entitled to performance on the part of the defendants; *a fortiori,* he was not entitled to interest prior to judgment. It is therefore apparent that any error in Finding V is not prejudical.

The judgment is affirmed.

Ashburn, J., and Nourse, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.