[Civ. No. 35217. First Dist., Div. One. Mar. 12, 1976.]

WALTER NEUMEYER et al., Plaintiffs and Appellants, v.
CROWN FUNDING CORPORATION OF AMERICA,
Defendant and Respondent.

## COUNSEL

Hopkins & Carley, Carley, Small & Munro and Bruce H. Munro for Plaintiffs and Appellants.

Bronson, Bronson & McKinnon, John H. Sears, Samuel D. Davis and Helen A. Wharton for Defendant and Respondent.

## OPINION

LAZARUS, J.*—This is an appeal from a judgment for respondents in an action to set aside a conveyance under Civil Code sections 3439-3439.12, the Uniform Fraudulent Conveyance Act. Appellants, judgment creditors of Bill W. Schmidt and Schmidt and Associates, Inc. (herein collectively referred to as Schmidt), seek to set aside a transaction between Schmidt and defendant and respondent Crown Capital Management Corporation. Crown Funding Corporation of America, also a defendant and respondent, is the successor in interest to Crown Capital Management Corporation by reason of a merger between the two corporations. The respondents will hence be referred to in the singular as Crown.

Fundamentally, this appeal poses the following two questions: (1) Did the court err in its finding after a trial without a jury that Schmidt did not have an actual intent to hinder, delay or defraud his creditors? and; (2) did the court err in failing to find that at the time of the conveyance in question Schmidt was insolvent within the meaning of the Uniform Fraudulent Conveyance Act? We conclude that the court as the trier of fact acted properly with respect to the first of the above-mentioned findings, but that the court erred as to its second finding since it was based upon a misinterpretation of law as to what facts appellants were required to show to prove insolvency under the Uniform Fraudulent Conveyance Act to entitle them to relief pursuant to section 3439.04 of the Civil Code.[1]

This dispute arises out of the following facts. Crown was formed in 1969 for the purpose of selling mutual funds and life insurance. The

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]Hereinafter all references to code sections are to the Civil Code unless designated otherwise.

founders of the corporation included Bill W. Schmidt, who invested $10,000 in the corporation for which he received 100,000 shares of Crown stock. In addition, Schmidt made a loan to the corporation in the sum of $10,000.

The only function that Schmidt was to perform on behalf of the corporation was to act as a finder for venture capital. Under the terms of an agreement dated July 15, 1969, Schmidt agreed to use his best efforts to solicit subscriptions for up to 100,000 shares of Crown stock at a price of $2 per share. Schmidt was to be paid $.20 per share for the shares for which he obtained subscriptions as compensation for his efforts. It was also agreed that if Schmidt failed to obtain subscriptions for 100,000 shares by October 15, 1969, he would upon request resell the shares for which he failed to secure subscriptions to Crown. Subsequently, Schmidt made representations to Crown that he had raised between $75,000 and $100,000 and that the money was in a trustee account at Wells Fargo Bank. Actually, however, he never produced a single subscription, nor did he ever turn over any money to Crown.

Schmidt then entered into two agreements with Crown, the first dated February 6, 1970, and a second dated April 1, 1970. The April agreement provided that Schmidt return to Crown 80,000 of the 100,000 shares of his own stock, that Crown's debt to Schmidt be cancelled, and that Crown release Schmidt from any and all obligations which may have arisen out of their prior dealings. It is this transaction that appellants seek to set aside.

After Schmidt executed the April agreement, he disappeared and none of the parties involved in this litigation has seen him since. Appellants were creditors of Schmidt on April 1, 1970, the date of the transaction which they seek to set aside.

At the trial appellants attempted to show a fraudulent conveyance in that the transfer was made with actual intent by Schmidt to defraud his creditors, or, in the alternative, that Schmidt was insolvent at the time of the transfer and that the transfer lacked fair consideration.

Section 3439.07 provides: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Section 3439.04 provides: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

The court made the following findings of fact, inter alia: That the agreement of April 1, 1970, lacked fair consideration within the meaning of section 3439.03; that Schmidt was not insolvent on April 1, 1970, or rendered insolvent by the agreement of April 1, 1970, as that term is defined in section 3439.02; that in entering into the agreement of April 1, 1970, Schmidt did not intend or believe that he (it) would incur debts beyond his (its) ability to pay as they matured; and that in entering into the agreement of April 1, 1970, Schmidt did not have an actual intent to hinder, delay or defraud his (its) creditors.

> *Did the court err in finding that Schmidt did not have an actual intent to hinder, delay or defraud his creditors?*

█ "Whether a conveyance is made with actual intent to defraud creditors is not a question of law but one of fact to be determined by the trial court." (*T W M Homes, Inc.* v. *Atherwood Realty & Inv. Co.* (1963) 214 Cal.App.2d 826, 844 [29 Cal.Rptr. 887]; accord, *Slater* v. *Bielsky* (1960) 183 Cal.App.2d 523, 527 [6 Cal.Rptr. 683].) Because of the difficulty of direct proof of actual intent to defraud creditors, in most cases the evidence must of necessity consist of inferences drawn from the circumstances surrounding the transaction and the relationship and interests of the parties. (*Slater* v. *Bielsky, supra,* at p. 526; *Taylor* v. *Osborne-Fitzpatrick Fin. Co.* (1943) 57 Cal.App.2d 656, 661 [135 P.2d 598].)

█ At trial, Robert Peer, a founder and director of respondent Crown, testified that the transaction with Schmidt of April 1, 1970, was entered into because of Crown's concern that Schmidt had sold Crown stock "all over" and its desire to get the stock out of circulation. Thus, respondent contends that the most reasonable conclusion to which the evidence is susceptible is that the real reason for the transaction in question was due to the concern of the Crown board of directors over the removal of Schmidt's shares from public circulation and to terminate his obligation to solicit venture capital.

True, there was considerable evidence that might have supported a finding of an actual intent on the part of Schmidt to defraud his creditors. But much of this evidence, including his heavy borrowing from third parties, and other bizarre conduct, including his subsequent disappearance, related to events that occurred some time *after* the Crown transaction.

And although the court found that the transaction lacked fair consideration, proof of inadequacy of consideration alone is not sufficient to establish fraudulent intent. Rather it is what is known as a mark or badge of fraud and as such is one factor which may be considered by the trier of fact in making its determination. (*Denehy* v. *Stewart* (1919) 41 Cal.App. 88, 98 [181 P. 839]; see also *Rossen* v. *Villanueva* (1917) 175 Cal. 632, 636 [166 P. 1004]; *Gafco, Inc.* v. *H.D.S. Mercantile Corp.* (1965) 47 Misc.2d 661, 664, 263 N.Y.S.2d 109, 114.)

▮ "The law is clear that in a fraud action the plaintiff must establish his case by clear and convincing evidence. [Citation.] It is equally well settled that the credibility of the witnesses, the weight that should be given to their testimony, and the inferences reasonably to be drawn therefrom, are for the determination of the trial court. [Citation.]" (*Beck* v. *Weather-Vane Corp.* (1960) 185 Cal.App.2d 688, 693 [8 Cal.Rptr. 680].) ▮ Thus, it cannot be said that the court erred in finding that the transaction in question was not entered into with the actual intent to hinder, delay or defraud creditors.

Appellants' reliance on *Dunlap* v. *Hood* (1942) 55 Cal.App.2d 97, 103-104 [130 P.2d 208], is misplaced. That case was not decided under section 3439.07 nor did the court find an actual intent to defraud.

Nor does *Rossen* v. *Villanueva, supra,* 175 Cal. 632, compel a reversal on this ground. In *Rossen,* the court affirmed the lower court's finding of fraudulent intent on the part of the parties to the transaction stating (at p. 636) that it found the "badges of fraud so convincing that it may well be doubted whether findings in favor of the defendants could have been sustained."

Similarly, *Chichester* v. *Mason* (1941) 43 Cal.App.2d 577 [111 P.2d 362], also cited by appellants, does not require a conclusion that the court erred in finding that Schmidt, in entering into the agreement of April 1, 1970, did not have an actual intent to hinder, delay or defraud his

creditors.[2] In that case there was evidence to support a finding that the grantees to whom the grantors transferred all of their real property (except their home, upon which a homestead had been filed) without consideration, had knowledge of the fraudulent intent on the part of the grantors, and thereby became participants in the fraudulent scheme.

■ A collateral issue related to the above is raised by appellants' contention that the trial court erred in refusing to admit proffered evidence of prior litigation against Schmidt. Appellants sought to introduce into evidence a certified copy of a complaint filed on January 9, 1970, against Schmidt in the San Francisco Superior Court. The complaint alleged actual fraud against Schmidt and appellants offered the evidence as tending to prove probable insolvency. The complaint was marked for identification but never admitted into evidence.

In *Babcock* v. *Omansky* (1973) 31 Cal.App.3d 625, 632 [107 Cal.Rptr. 512], the court held that it was not error to admit evidence of other pending lawsuits on claims against a defendant even though they may have been unfounded. There, as in the instant case, the evidence was offered on the issue of probable insolvency at the time a conveyance was made.

It is concluded that the court did not err in failing to admit the complaint into evidence in the instant case as this evidence was at best merely cumulative and thus its admission was within the discretion of the trial court. (Evid. Code, § 352; *Tip Top Foods, Inc.* v. *Lyng* (1972) 28 Cal.App.3d 533, 554 [104 Cal.Rptr. 718].)

> *Did the court err in failing to find that Schmidt was insolvent within the meaning of the Uniform Fraudulent Conveyance Act?*

The memorandum decision of the court indicates that it found that Schmidt was not insolvent on April 1, 1970, or rendered insolvent by the agreement of April 1, 1970, because appellants failed to provide specific evidence that Schmidt's obligations exceeded the fair salable value of his (its) nonexempt assets on April 1, 1970. ■ ■■■ The court stated

---

[2]This case, however, does contain the following confusing language: "It is conceded that if the deeds in question were made without consideration and that thereafter the Bergmans became insolvent, the presumption that said deeds were made with intent to hinder, delay, and defraud creditors, and particularly the plaintiff, would attach." (*Chichester* v. *Mason, supra,* 43 Cal.App.2d 577 at p. 583.) In cases based on actual intent to defraud, the solvency of the transferor is immaterial. (*Fross* v. *Wotten* (1935) 3 Cal.2d 384, 388-389 [44 P.2d 350].)

that "It is not sufficient to show that Schmidt had a number of debts and even had some judgments against him; there must be specific evidence that the obligations exceeded the fair salable value of the non-exempt assets on April 1, 1970 [citation]. Plaintiffs have not presented evidence to establish the fair salable value of any of Schmidt's assets on or about April 1, 1970."[3]

The record indicates that the court was of the opinion that appellants had the burden of proving the total extent of Schmidt's assets, an impossible task because of Schmidt's disappearance.

At the trial, appellants produced considerable evidence concerning Schmidt's liabilities on April 1, 1970. Although they added up in the aggregate to a rather substantial figure, it appeared, however, that many of these liabilities had not matured as of April 1, 1970.

■ It is true that ordinarily the burden of proving insolvency is on the creditors, and, as a general rule, solvency and not insolvency is presumed. (*Stearns* v. *Los Angeles City School Dist.* (1966) 244 Cal.App.2d 696, 737 [53 Cal.Rptr. 482]; *Miller* v. *Keegan* (1949) 92 Cal.App.2d 846, 851-852 [207 P.2d 1073].) To overcome the presumption of solvency, there must be some basis in evidence for determining that the amount of the debtor's obligations exceeded the then present fair salable value of his nonexempt assets. (*T W M Homes, Inc.* v. *Atherwood Realty & Inv. Co., supra,* 214 Cal.App.2d 826 at p. 847.)

■ Appellants argue that where, as here, the plaintiff-creditor has established a prima facie case of insolvency by demonstrating extensive liabilities on the part of the debtor and the evidence shows that all efforts by creditors to locate either the debtor or his assets have proven fruitless, the burden of producing further evidence on the insolvency issue should be shifted to the defendant. Respondent contends, on the other hand, that the burden of proving insolvency and of presenting evidence on that issue is always on the plaintiff, and that in the instant case appellants failed to present proof to dispel the presumption of solvency.

Appellants cite *Wight* v. *Rohlffs* (1941) 48 Cal.App.2d 696 [121 P.2d 76], in support of their position. In *Wight* the court noted (at p. 699) that section 3450 states that "A debtor is insolvent, within the meaning of this

---

[3]Although a memorandum of decision of a trial court cannot be invoked to contradict the findings or judgment, it may be used in discovering the grounds thereof. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 231, p. 4221.)

title, when he is unable to pay his debts from his own means, as they become due." The court then stated, "And as to the burden of proof, the defendant in her brief . . . concedes the rule to be that '. . . if, in a fraudulent conveyance case under section 3442 of the Civil Code [repealed Stats. 1939, ch. 329, § 1, p. 1667, replaced with §§ 3439.04-3439.11], the complaining creditor shows that the deed was executed without consideration, a *prima facie* case is made and the burden is then shifted to the grantor or grantee or whoever may be defending the case, to show that the grantor had sufficient assets to pay his debts. This has been the rule for a long time,' says the defendant, 'and when a grantor, or his grantee, or whoever is defending the case, meets this burden by showing that the grantor was solvent, the burden ceases.' "

Respondent contends that this case "standing alone and having such an unusual posture regarding the burden of proof," cannot be held to establish a rule contrary to the well established rule in California that the burden of proving insolvency is on the plaintiff. Respondent argues further that there is no need to turn to other jurisdictions for guidance in the face of such a well established California rule.

We note, however, that *Wight* does not stand alone. In *Schwartz* v. *Brandon* (1929) 97 Cal.App. 30, 38 [275 P. 448], the court stated: "A grantor who sets up a voluntary conveyance knowing that he has pre-existing creditors is required to prove that he had means to satisfy the creditors, at the time of the transfer, over and above the value of the transferred property." (Accord, *Betty* v. *Knapp* (1935) 5 Cal.App.2d 512, 518 [43 P.2d 325].)[4]

As to respondent's contention that we need not look to other jurisdictions for guidance, we observe that section 3439.12 directs, "This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those States which enact it." Hence we deem it appropriate to consult the decisions of other jurisdictions in which the Uniform Fraudulent Conveyance Act has been enacted.

The State of New York has adopted the Uniform Fraudulent Conveyance Act. (See N. Y. Debtor and Creditor Law (McKinney's Consol.) §§ 270-281.) In *Gafco, Inc.* v. *H.D.S. Mercantile Corp., supra*, 47

---

[4]In *Betty*, the appellate court held that $10 is not a valuable consideration for the transfer of property worth several thousand dollars, and the recital in a deed of " 'other valuable consideration' " is merely a conclusion and not a statement of fact showing valuable consideration. (*Betty* v. *Knapp, supra*, 5 Cal.App.2d 512 at p. 517.)

Misc.2d 661, 665 [263 N.Y.S.2d 109, 115] the court, after noting that a voluntary assignment made when the evidence shows that there are existing indebtednesses is presumptively fraudulent, stated: "And since the record reflects that at the time of the making of the voluntary assignment there were indebtednesses of HDS then in existence, the burden is on HDS to rebut the presumption of fraud. See Collier, [Bankruptcy 13th Ed.], p. 1783(6); Am.B.R.Digest, Sec. 679; also Smith v. Reid, 134 N.Y. 568, 31 N.E. 1082; Kerker v. Levy, 206 N.Y. 109, 99 N.E. 181; Ga Nun v. Palmer, 216 N.Y. 603, 111 N.E. 223; also, Klinger v. Hyman, C.C.A., 2d Circ., 223 F. 257, 34 Am.Bankr. Rep. 338. [¶] As was stated by Judge Cardozo in the case of Ga Nun v. Palmer (supra, p. 611): '[A] transfer without consideration by one who is then a debtor raises a presumption of fraud. The creditor may stand upon that presumption until it is repelled.' [¶] That there was no consideration for the assignment is made abundantly clear by the facts and circumstances surrounding it. The judgment debtor did nothing to rebut this presumption. No proof was offered to show HDS's solvency at the time of the assignment. On the contrary, that it was not solvent at the time is eloquently expressed by HDS's silence and documented by the outstanding claims existing and unsatisfied judgments recovered against it both before and after the assignment. [¶] Although it is reasonably clear that, if there is not evidence sufficient in itself to show actual intent to defraud, a conveyance or assignment cannot be set aside under Section 276 of the Debtor and Creditor Law, Section 273 is founded upon another theory, which is that a transfer by an insolvent is fraudulent irrespective of any actual intent. And we think this means that if one indebted makes a voluntary transfer, it is presumed, in the absence of some proof to the contrary, that he was then insolvent. Cole v. Tyler, 65 N.Y. 73; Smith v. Reid, 134 N.Y. 568, 31 N.E. 1082; Kerker v. Levy, 206 N.Y. 109, 99 N.E. 181."[5] (See also *Wilson* v. *Robinson* (2d Cir. 1936) 83 F.2d 397, 398.)

Pennsylvania is another jurisdiction that has adopted the Uniform Fraudulent Conveyance Act. (See 39 P.S., §§ 351-363.) In *United States v. St. Mary* (E.D. Pa. 1971) 334 F.Supp. 799, 804, the court stated: "A construction of 39 P.S. § 354 shows that certain principles are well settled within this controlling section of the applicable state law. When the conveyor is in debt at the time of the conveyance, the burden rests upon the grantee to establish by clear and convincing evidence that either the

---

[5] Section 273 of the New York Debtor and Creditor Law is identical to section 3439.04, while section 276 is identical to section 3439.07.

conveyor was solvent, Farmers Trust Company of Lancaster v. Bevis, 331 Pa. 89, 200 A. 54 (1938), and was by such conveyance not rendered insolvent; or that a fair consideration had been paid for the conveyance."[6] (See also *Fidelity Trust Co.* v. *Union Nat. Bank of Pittsburgh* (1933) 313 Pa. 467, 472-473 [169 A. 209, 212] [cert. den., 291 U.S. 680 (78 L.Ed. 1068, 54 S.Ct. 530)].)

Similarly, in Maryland where the Uniform Fraudulent Conveyance Act has also been adopted (see Md. Code Ann. Art. 39B, §§ 1-14, repealed eff. July 1, 1975, now C.L. §§ 15-201—15-214), the rule is that a voluntary conveyance is prima facie invalid as against existing creditors of the grantor who has no sufficient means to pay his debts and that the burden is on the party claiming under the conveyance to prove that a debtor had sufficient property with which to pay his debts, exclusively of that conveyed away. (*Lacey* v. *Van Royen* (1970) 259 Md. 80, 93 [267 A.2d 91, 97]; see also *Douglass* v. *First National Realty Corporation* (D.C. Cir. 1972) 351 F.Supp. 1142, 1146.)

*Miller* v. *Keegan, supra,* 92 Cal.App.2d 846, relied on by the trial court in reaching its decision, may be readily distinguished. There the only evidence relating to the transferor's financial affairs was certain statements by his wife. The court noted the presumption of solvency and stated (at p. 852), "To overcome this presumption a fair interpretation of the statute requires some basis in evidence for determining that the amount of the debtor's obligations exceeded the then present fair salable value of his nonexempt assets." The extent of the transferor's debts was not shown except for the amount owed the plaintiff while the record disclosed assets in a greater amount. In *Miller,* the creditor therefore failed to even produce enough evidence to establish a prima facie case of insolvency.

Section 3439.02, subdivision (a), states: "A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." ■ Section 3439.01 defines debt as including "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." Thus, the fact that some of the liabilities of Schmidt introduced into evidence had not matured as of April 1, 1970, is not determinative.

---

[6] 39 P.S., section 354 is identical to section 3439.04.

■ We have therefore reached the conclusion that under the Uniform Fraudulent Conveyance Act a voluntary conveyance, one made without fair consideration, when the evidence shows that there are existing indebtednesses, is presumptively fraudulent. It is then incumbent upon the grantee to prove that the conveyor was solvent. In the instant case respondent offered no evidence to show the value of Schmidt's nonexempt assets on the date of the conveyance. Since the court therefore erred in its ruling that appellants had the burden of presenting further evidence that Schmidt's obligations exceeded the fair value of his nonexempt assets, the judgment in favor of respondent must be reversed.

Judgment reversed.

Molinari, P. J., and Sims, J., concurred.